McLaughlin, trustee, *v.* Ham.

1. Where, in a claim case, the levy and claim both cover the fee, and a life estate in the property but no more is subject to the execution, the jury ought so to find, instead of finding generally in favor of either party.
2. A married woman being by the terms of the settlement, executed in 1848, the usee for life in the trust property, which was hers prior to the marriage, and retaining over the fee an absolute power of disposition by deed or will, is wholly independent of the trustee since the enactment of the married women's law of 1866, and her life estate in the property is subject to levy and sale for her debts.
   July 12, 1890.

Verdict. Estates. Trusts. Married women. Levy and sale. Before Judge Adams. Chatham superior court. March term, 1889.

An execution against A. Bonaud, Agnes Bonaud and Johanna Lavin in favor of E. Y. Ham, based upon a judgment of January 27th, 1888, was levied upon a five acre lot at the Isle of Hope in Chatham county, on which was situated the residence of Johanna Lavin, its

boundaries being given, as the property of said Johanna. A claim was interposed by John McLaughlin, as trustee for Johanna Lavin and her children. Upon the trial the only testimony introduced was the *fi. fa.* and the entries thereon, a deed of marriage settlement, the petition and order appointing McLaughlin and the admission of facts set forth in the petition, with the admission that defendant was in possession ; the property levied on being embraced under the deed of marriage settlement, and the sole question being whether it was subject to levy and sale under the *fi. fa.* The deed was executed October 21st, 1848, between Johanna Bransby, John O. Lavin and J. F. O'Neill as trustee. It provided that as a marriage was contemplated between Johanna and Lavin, upon the contract of which marriage it had been agreed by Lavin that all of the estate of Johanna should be settled for the sole use, benefit and behoof of her and the child or children, the issue of said marriage, as might thereafter be born, and not to be subject in any manner to the debts, contracts and liabilities or control of Lavin or any future husband of said Johanna, and that as Johanna was entitled in her own right to two five acre lots situated on the Isle of Hope, with the buildings and improvements to them belonging, and also certain slaves, horses, furniture, etc., and other estate of which she might then or at any future time be seized and possessed,—in consideration of the intended marriage, and with the free consent and approbation of Lavin, the said Johanna conveyed to O'Neill, his heirs, executors, etc., the lots on the Isle of Hope, together with other property, and all the real or personal estate of which she was then seized or to which she might at any time thereafter become possessed or entitled, "unto him, the said Jeremiah F. O'Neill, upon the trusts, conditions and limitations hereinafter mentioned and

expressed, and upon none others: First, upon trust to have and hold . . ' as trustees . . to and for the sole and separate use, benefit and behoof of me, the said Johanna Bransby, the said party of the first part, during my natural life, not to be subject in any way or manner to any of the debts, contracts or liabilities of the said John O. Lavin, my intended husband, present or future, with full power vested and reserved to me, by and with the free consent and approbation of the said John O. Lavin, testified to by his being a party to this indenture, at any time during my natural life to sell and dispose of the whole or any portion of the said estate, real or personal, hereby conveyed, to any person or persons whatsoever, by deed or will duly executed by me according to law, and upon failure of me, the said party of the first part, to execute the power hereby reserved to myself as aforesaid, then and in such case to have and to hold all and singular the said estate, real and personal, hereby conveyed and intended so to be, and all and singular the rents, issues, increase, income and profits thereof, from and immediately after my death, to and for the sole use, benefit and behoof of such child or children, the issue of the marriage of me, the said Johanna Bransby, and the said John O. Lavin, as shall be living at the time of my death, share and share alike, if more than one, but if only one then for that one, his, her heirs and assigns forever.    Second, upon trust, if from any cause whatsoever, during the continuation of this trust, it shall be necessary or advisable that any portion of the said estate, real or personal, hereby conveyed or intended so to be, should be sold, then and in that case it shall and may be lawful for him, the said party of the third part, trustee as aforesaid, by and upon the written request of me, the said party of the first part, to sell and dispose of the same at public or private sale as to him shall seem most

for the interest of all concerned, for the best price he can obtain therefor, without any application to a court of chancery to authorize the same. And upon such sale and the receipt of the consideration therefor, to execute and deliver a good and sufficient title thereto, as trustee as aforesaid, reinvesting the proceeds in such other estate, real or personal, as may be directed and required, and then to hold the same upon the same trusts, uses and conditions and limitations as are above more particularly mentioned and expressed, and upon none other."

In November, 1888, Johanna Lavin, Agnes Bonaud, her daughter, three children of Agnes Bonaud by her as their next friend, and Irene Heinsler, whose mother now deceased was a daughter of Johanna Lavin and who appeared by her next friend, by their petition to the judge of the superior court sitting in chambers, alleged that Johanna Lavin, by the deed of trust above mentioned, conveyed to O'Neill, as trustee for petitioners, the lots on the Isle of Hope; that the trust was accepted by O'Neill, who was seized and possessed of the land under the deed until the——day of——, when he died, leaving five acres of the property unrepresented and the office of trustee vacant. Wherefore petitioners asked for an order appointing McLaughlin trustee of petitioners under the trust deed, in the place and stead and with all the rights and duties of O'Neill, "to hold the said lot of land upon the same uses and trusts as are in said trust deed mentioned," and that such other and further relief might be granted to petitioners as should seem proper. The judge ordered that Agnes Bonaud be appointed next friend for her minor children, and that Henry Heinsler be appointed next friend of Irene Heinsler. He appointed McLaughlin trustee "under said trust deed in the place and stead of Jeremiah F. O'Neill, deceased, and with all rights and

duties conferred by said trust deed on the said deceased trustee"; and McLaughlin accepted the appointment.

The jury under the direction of the court found the property not subject; and the plaintiff moved for a new trial, which was granted, the judge holding that, as to the life estate of Mrs. Lavin, he had reached the conclusion that the trust had become executed and that the life estate might be made the subject of levy and sale, and that the court erred in holding that the trust was wholly executory, and that upon this ground a new trial should be granted, in order that the legal estate of Mrs. Lavin might be declared subject. The claimant excepted.

Lester & Ravenel, for plaintiff in error.

R. R. Richards, contra.

Bleckley, Chief Justice.

1. The trial judge granted a new trial for the reason that the defendant in *fi. fa.*, Mrs. Lavin, has an estate for her own life which is subject to levy and sale. If that ruling be correct, the judgment ought to be affirmed; for although a larger estate, the fee simple, was levied upon, yet if the lesser estate is subject, the execution should proceed against the property and a sale of the life estate be had. If the levy be too comprehensive, that will not prevent a sale under it of such estate as is subject to the lien of the judgment. If the levy is too large on the one hand, so is the claim on the other. The legal efficacy of each of them may be cut down on the trial of the claim case by the verdict of the jury, the former to the life estate, and the latter to the remainder. No matter what is comprehended in a levy, a sale under it only passes such interest as the defendant in execution has in the property.

2. The marriage settlement was executed in 1848. Its terms appear in the official report. The property

settled belonged to the prospective wife, not to the prospective husband. She conveyed to a trustee to hold for her sole and separate use during her life, and, contingently, in remainder for children. But she reserved to herself a power of disposition by will or deed, without any limitation or restriction upon the power save the consent of her intended husband, and that consent was to be, and was, manifested once for all by signing the settlement. This left her complete mistress of the legal title, in case she chose to exercise the power of disposition. And it is manfiest that the interposition of a trustee was only for the purpose of holding off the marital rights of the husband. When this function of the trustee became unnecessary to continue longer by reason of the act of 1866, there was nothing left for him to do, during this lady's life, which she could not do without him and quite independently of his co-operation. The power of sale which hé took by the terms of the instrument could not be exercised save by her written request. She could sell and convey by her own act alone, or through him, at her option. As she could do it in either mode, it was needless for him to continue in the trust, save to keep up this right of election, which was in no respect essential to her enjoyment of the property. The property levied upon was real estate, and she had, during her life, the exclusive use of it, and might sell not only the life estate but the fee, and no one could hinder her from so doing. Would not this dominion over the property in her be inconsistent with any sound theory that her estate in it for life is not subject (since the act of 1866) to levy and sale for her debts? If she could sell it forever and appropriate the proceeds to her own use, why cannot the sheriff sell it for the period of her life to pay her debts? We can see no reason why he cannot; and the case has peculiar features which distinguish it from all the cases cited by

counsel, and from any others on the subject of which we have knowledge. We think it may safely be laid down that one who has, out of his or her own property, carved an estate for life, retaining also an unlimited power of disposition over the fee, whether a trust does or does not exist as to the remainder, has an interest in the property which is now subject to levy and sale for the payment of his or her debts. We decide the case on its special facts. Now that the rights of married women have so little to distinguish them from the rights of other persons, and when legal and equitable rights generally, and the remedies to enforce them, are so little dissimilar as they are in our law, we are quite confident that the decision is sound in essence and principle. If any reason whatever can be adduced against it, it is so refined and technical as to merit no serious consideration, when a question of substantial justice is involved. Whether the trustee will have anything to do in behalf of the remaindermen, depends solely and entirely upon the future will and conduct of this tenant for life. Should she choose, without his co-operation, to dispose of the fee, whether by sale or devise, the trustee will have nothing to do with it. In such event, there will be no remainder to protect. Can it be said that a trust interest, contingent altogether upon the volition of a debtor, both during life and at death, shall suffice to protect a certain and definite estate of such debtor against levy and sale in behalf of his or her creditors? We think this is too high a prerogative to be claimed for any debtor, male or female, married or single, in the present condition of our law. The case of *Schnell* v. *Toomer*, 56 *Ga*. 168, was governed by the law as it stood prior to the act of 1866, the action in that case having been commenced in 1860. In *Thomas* v. *Crawford*, 57 *Ga*. 211, the usee for life was not the creator of the trust, nor had he any power of disposition over the fee.

The same may be said of *Jennings* v. *Coleman*, 59 *Ga*.
718.   In the present case, not only was the usee for life
the owner of the property before it became affected by
the trust, but she retained a power over it which sub-
jected the trustee and his interest in the property to her
will and pleasure. · She could dispose of it without
consulting him, and appropriate the proceeds to herself.
She has title upon which she could recover in ejectment.
*Glover* v. *Stamps*, 73 *Ga*. 209.   The trust as to her estate
for life was executed by the act of 1866.   *Kile* v. *Fleming*,
78 *Ga*. 1.
     There was no error in granting a new trial.
                                   *Judgment affirmed*.