. ABBETT et al. v. BLOHM et al.

(Supreme Court, Appellate Division, First Department.   November 16, 1900.)

JUDGMENT—VACATING—GROUNDS.

    Plaintiffs obtained in 1891 a judgment by default against defendants, who were brother and sister. Service was made on the brother, and notice of appearance for both defendants was given by attorneys retained by him, without authority from his sister. An answer was interposed, verified by the brother. The attorneys making the appearance are still living, and are responsible persons, while two partners of plaintiffs, who were material witnesses to establish plaintiffs' cause of action, are dead, and the books and papers containing the items of service for which the judgment was obtained have been destroyed. *Held*, that the judgment would not be vacated in 1900, on motion of the sister, because of the failure to serve process on her, and the unauthorized appearance of attorneys for her, since it would be prejudicial to plaintiffs to relitigate the claim, and defendants' remedy by action for the unauthorized appearance is complete.

Appeal from special term, New York county.

Action by Leon Abbett and others against Emma A. Blohm and another. From an order vacating a judgment for plaintiffs, they appeal. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Henry Schmitt, for appellants.

Thomas C. Whitlock, for respondents.

O'BRIEN, J. The judgment sought to be assailed was entered upon the 14th day of February, 1891, and the order to show cause why it should not be vacated was dated April 7, 1900, and the order vacating it was entered on the 11th day of June, 1900. The ground of the motion was that the defendant Emma A. Blohm had never been personally served with the summons and complaint, and did not authorize the attorneys to appear for her. The action against the defendant and her brother was for legal services rendered by the firm of Abbett & Fuller during the years 1885 and 1886, and it is conceded that the summons and complaint were duly served upon the brother in the month of May, 1888; that thereafter a notice of appearance was given by Messrs. Hurd & Grim for both defendants, and an answer was interposed, which was verified by the brother. In February, 1891, the case having been reached upon the calendar, upon default of the defendants an inquest was taken, and judgment entered against them. In addition to swearing that she was never served with the summons and complaint, the defendant alleges that she neither retained nor authorized any attorney to appear for her; that the appearance of Messrs. Hurd & Grim was without her authority, knowledge, or consent; and that she never had any knowledge of the action or the judgment till March, 1900, when, having made a contract to sell some property which she had in the borough of Brooklyn, the judgment was disclosed in the course of an examination of title upon a search made by a title company. In her affidavit the defendant says:

"Deponent does not intend to criticise the action of Messrs. Hurd & Grim in serving the notice of appearance and answer for her, as she is fully aware that they would never intentionally exceed their authority, as no firm practicing in the city of New York stood higher than they; but deponent believes that the summons and complaint herein was served upon her brother Charles A. Blohm, and upon him only, and that he, without her knowledge, consent, or authority, went to Messrs. Hurd & Grim and requested them to appear for both, and that they, knowing the said Charles A. Blohm, and knowing that deponent was his sister, naturally believed that he was authorized to make such request, and for this reason served the notice of appearance and answer in her behalf."

She further states that she has not been on friendly terms with her brother since the year 1886. Her affidavit is supplemented by one showing the entry in the register of the attorneys who appeared in the action, and Mr. Grim (one of them) avers:

"That deponent's firm was retained by the defendant Charles A. Blohm to appear for both defendants; that deponent's firm was not personally retained by Emma A. Blohm, nor was she seen, or any transaction had with her, but that all matters pertaining to this action were transacted through the defendant Charles A. Blohm."

This latter affidavit is to be construed in the light of one subsequently made by Mr. Grim, in which he says:

"I do not wish to be understood by the affidavit so made that my firm of Hurd & Grim had no authority to appear in the action for Emma A. Blohm, but, on the contrary, my firm would not have appeared for her unless there was some authorization by her. We were authorized by her in some way to appear for her, but I do not remember the details."

Upon the question of the extent of the brother's authority to retain lawyers for the defendant, there is submitted a counter affidavit showing that in two actions brought prior to the one here involved, and wherein she and her brother were also defendants, the latter employed attorneys to appear for her, and his authority in those actions is not disputed. Serious doubt is thus created as to whether the brother was entirely without power to authorize the appearance for her; but if we pass that question, and assume that she conferred upon him no such right, and that the appearance was unauthorized, the question is then presented whether, upon the other facts shown, the motion to vacate the judgment should at this late day have been granted. We will further assume, favorably to defendant, that laches are not to be imputed to her. But it is made to appear by the years which have elapsed since the judgment was entered, during which both of the senior members of the firm of Abbett & Fuller have died, and their books have been destroyed, that the effect of setting aside the judgment would be to prevent any recovery, even though a just claim existed against her, not alone because the evidence could not now be procured, but also because the statute of limitations would be a bar. And it is admitted that the attorneys who appeared for the defendant are reputable and responsible lawyers, both of whom are still living, and can respond, should she be able to prove that they put in an appearance for her without authority. The question we are thus called upon to determine is neither new nor unsettled, for in a long line of cases the rule to be applied, though sometimes criticised, has been firmly adhered

to, so far as domestic judgments are concerned; and in 11 Enc. Pl. & Prac. p. 685, a copious list of the cases is given, and a summary of them is thus stated:

"Taking some early English cases as their guide, they hold that an appearance by attorney, whether for the plaintiff or the defendant, if there be no collusion, may be recognized by the adverse party as authentic and valid; that, when an attorney takes upon himself to appear, the court, in case of a domestic judgment, looks no further, but proceeds as if the attorney had sufficient authority, and leaves the party to his action against such attorney, if he is financially responsible. * * * And the rule that in the case of a strictly domestic judgment a party not served, but for whom an unauthorized appearance was entered by an attorney, may not on these grounds assail the judgment for want of jurisdiction, when it comes in question collaterally, does not apply where the party was at all times a nonresident and out of the jurisdiction. The court may, on motion in the action, grant relief, either by setting aside the judgment, or by staying proceedings and permitting the party to come in and defend."

The leading case in this state, of Denton v. Noyes, 6 Johns. 297, is thus summarized in Vilas v. Railroad Co., 123 N. Y. 441, 25 N. E. 941, 9 L. R. A. 844:

"A domestic judgment rendered by a court of general jurisdiction against a party who had not been served with process, but for whom an attorney of the court had appeared, though without authority, was neither void nor irregular. The doctrine of the prevailing opinion in that case encountered a vigorous opposition from one of the judges at the time, and it is not too much to say that the reasoning upon which it rests has frequently been criticised by judges, and the justice of the rule denied. But it has been followed, and must be regarded as the law of the state. Hamilton v. Wright, 37 N. Y. 502; Brown v. Nichols, 42 N. Y. 26."

In Vilas v. Railroad Co., supra, after reviewing the authorities the court observed:

"We are bound, under our decisions, to follow the doctrine of Denton v. Noyes, in cases where it is strictly applicable. It is, as to such cases, stare decisis. But we are not disposed to extend the doctrine of that case to cases fairly and reasonably distinguishable."

Then the court proceeds to distinguish the two cases upon the facts appearing, that, in the one before it, the attorney upon whose unauthorized appearance the judgment was entered was dead, and at the time of his death his estate was entirely inadequate to pay the judgment; that the judgment was rendered against the moving party and two others jointly, which judgment, upon the appeal of the latter, was reversed as to them; and that it was not shown that the delay in making the motion had changed the status of the plaintiff.

Many of the decisions on this subject will be found collated in 1 Bliss, Ann. Code (3d Ed.) p. 42, where a summary of them as to the effect of appearance by attorney is thus given:

"The authority of an attorney who appears for a party is presumed. If no rights have been acquired, the court, upon prompt application, will set aside an unauthorized appearance; otherwise, the injured party will be left to redress against the attorney."

Upon the facts, we think that this case cannot be distinguished from that of Denton v. Noyes, supra, and that at this late date, as correctly urged by the appellants, a refusal to follow it would be to

upset the entire and long-established practice, sustained by a uniform line of decisions, and destroy the credit that must, under the rule in that case, be given to such notices of appearance by attorneys and by the court, to which we might add that the result of the application of any other rule would be not only to affect many titles to real estate, but to render unsafe and insecure rights acquired under judgments in actions wherein there was no personal service. Where it is shown that the appearance of the attorney is unauthorized, the court undoubtedly has power, in its discretion, to vacate the appearance and set aside the judgment; but it is only proper to exercise that authority where the application has been made promptly, or the other party has lost no rights by the delay. In this case notice of appearance for the defendant was served on the plaintiffs in 1888. An answer was interposed by her attorneys, and because of the interposition of the answer the trial of the action was postponed for $2\frac{1}{2}$ years, and the plaintiffs finally succeeded in obtaining a judgment by default in May, 1891. Since that time two partners of the plaintiffs, who were familiar with the case, and who would have been material and competent witnesses to establish the plaintiffs' cause of action, have died. All the books and papers containing the items of services rendered for the defendants for which judgment was recovered have been destroyed. It is apparent, therefore, that owing to this delay the rights of the plaintiffs would be substantially prejudiced by requiring them now to litigate a claim upon which they recovered judgment in 1891. For this reason, we do not think that the case is one where the defendants should be permitted to try the action. If in fact the appearance of the attorneys was unauthorized, the defendants have a perfect remedy against them, and should be required to adopt that remedy.

The order appealed from, therefore, should be reversed; with $10 costs and disbursements, and the motion to vacate the judgment denied, with $10 costs. All concur.