HEATH *v.* MILLER *et al.,* and *vice versa.*

1. Where in 1845 a deed was made conveying a life-estate in specified property to a trustee, for the benefit of a married woman, with a legal remainder in fee to her children, and power was given to the trustee to sell the fee, with the consent of the life-tenant, and for her benefit, the execution of the trust, so far as the life-estate was concerned, by the passage of the "married woman's act" of 1866 did not extinguish the power of sale; it being the intention of the grantor, derivable from the language of the trust conveyance, that this power should be kept alive, to be exercised for the benefit of the life-tenant whenever she and the trustee deemed it wise to do so.

2. The judges of the superior courts of this State have power at chambers to appoint and remove trustees; and applications for this purpose may be entertained at any place within their respective circuits, without reference to the residence of the parties or the location of the property, the proceedings had on such applications being always returned to the clerk of the superior court of the proper county. If the proceedings are otherwise regular, the fact that they were recorded in the wrong county, or were not recorded at all, would not vitiate the judgment. Nor, after the lapse of more than thirty years, would the judgment be invalidated because it appeared on the face of the

proceedings that the hearing was had and the order passed at a date later than that on which the rule nisi was returnable. In such a case the presumption is that a proper continuance was had.

3. When attorneys appear in court claiming the right to represent a person named as a party to a cause, there is a strong presumption that they have the authority so to do. This presumption increases in strength with lapse of time; and where, after the expiration of more than thirty years after the judgment, a direct attack is made upon the authority of the attorneys, by a motion to set aside the judgment rendered in the cause, the strongest and most satisfactory evidence is required to overcome the presumption.

4. Even if such a judgment is open to a collateral attack by the party whom the attorneys claimed to represent, the presumption in favor of the validity of the judgment and the authority of the attorneys is even stronger than in case of a direct attack where the attorneys are given an opportunity to meet the charge that their appearance was wholly gratuitous and unauthorized.

5. Is not an entry of appearance by an attorney, he being an officer of the court, entitled to as much force as an entry of service by a sheriff, which is binding until traversed and set aside in a direct proceeding brought for this purpose?

Argued February 24, — Decided April 8, 1903.

Complaint for land.   Before Judge Brinson.   Richmond superior court.   January 31, 1902.

*F. W. Capers* and *W. H. Fleming*, for plaintiff.

*J. C. C. Black, F. H. Miller, W. K. Miller, E. H. Callaway*, and *C. H. Cohen*, for defendants.

COBB, J.   This was an action by Mary Jane Heath against Bates Miller and others, for the recovery of a described parcel of land. The trial resulted in a judgment for the defendants, and the plaintiff assigns error upon a judgment overruling her motion for a new trial.

On May 20, 1845, Meredith conveyed to McWhorter, as trustee, the land in controversy; that portion of the deed which is material to the present discussion being in the following words: "In trust always, nevertheless, and for the sole and separate use, benefit, and behoof of Mrs. Martha E. Cavender, wife of Philip M. Cavender, of said county, wholly free from the control and not liable for the debts of her present or any future husband, for and during the term of her natural life, and after her death to her children by said Philip M. and their heirs forever, share and share alike.   Provided that the said remainder in fee simple may be defeated and said trust estate aliened by deed of said trustee, or his successors, in which said Martha E. Cavender shall join, the proceeds of said

sale being held by said party of the second part under the trust and limitations herein set forth. And in the event of the death, resignation, or removal from the State of the said Jacob G. McWhorter, or any of his successors, another trustee may be appointed by said Martha E. Cavender, by instrument in writing under her hand, who shall immediately and ipso facto become vested with all the powers hereby vested in said party of the second part." Sistrunk was appointed as trustee to succeed McWhorter, in the manner provided in the trust deed; and upon his resignation Houston was appointed, in the same manner, trustee in his place. Subsequently Mrs. Cavender married Houston, and on July 15, 1867, by an order of the judge of the superior court of the Middle circuit, at chambers in Richmond county, Houston was removed as trustee and Heath appointed in his stead. The plaintiff, who was formerly Mary Jane Cavender, the only child of Philip M. and Martha E. Cavender, was born June 1, 1845, attaining her majority on June 1, 1866. She married Heath in 1864, while yet a minor. The name of Mary Jane Heath appeared as a party plaintiff in the application above referred to, to remove Houston as trustee, and attorneys appeared claiming to represent her. On August 15, 1867, Heath, as trustee, by a deed in which Martha E. Houston (formerly Cavender), the life-tenant under the trust deed, joined, conveyed the property in fee to John F. Miller. The defendants claim under Miller. Mrs. Houston (formerly Cavender) died October 1, 1896. This action was brought in 1899. The question, therefore, to be determined is whether Heath, as trustee, had authority to make the deed to Miller in 1867. If he did have such authority, as against the rights of his wife, the judgment in favor of the, defendants was correct. If he did not have this authority, either because the power of sale did not exist at that time, or because his appointment as trustee was, as against his wife, illegal and void, then the plaintiff ought to have prevailed, provided she had a right to attack that appointment in this case.

Under the trust deed to McWhorter two estates were created — one a life-estate in favor of Mrs. Cavender, and the other a remainder, which enured to the benefit of the plaintiff. The life-estate thus created was manifestly an equitable estate, the title to which passed to the trustee for the benefit of the life-tenant. Under the view we have taken of the case, it is not absolutely necessary to determine the

character of the estate in remainder, whether it was a legal or equitable estate, or a vested or contingent remainder; but the estate thus created would seem, under previous decisions of the court, to be a legal remainder in fee, the title to which did not pass to the trustee. See *Tillman* v. *Banks*, 116 *Ga.* 250, and cases therein cited; *Overstreet* v. *Sullivan*, 113 *Ga.* 891. Treating the trustee as having acquired title to the life-estate only, did the power of sale exist in 1867? It is too well settled now to admit of discussion that the effect of the passage of the "married woman's law" of 1866 was to execute a trust previously created for the sole benefit of a married woman. *Overstreet* v. *Sullivan*, supra; *Trammell* v. *Inman*, 115 *Ga.* 874. There are also a number of earlier decisions to the same effect, which can be found by reference to the two cases cited. It follows that in 1867, when Heath, the trustee, undertook to exercise the power of sale, the legal title to neither of the estates created by the deed to McWhorter was in the trustee; for even if a trust was created as to the remainder, Mrs. Heath, the sole remainderman, was married and had attained her majority when the deed to Miller was executed. The mere fact that the legal title in the trustee was divested by the passage of the act of 1866 would not, however, extinguish the power of sale conferred by the trust deed. Whether the divesting of the legal title would have this effect in a given instance depends mainly on the intention of the grantor as manifested by the language of the instrument conferring the power. The exercise of a power of sale is not, therefore, absolutely dependent on the existence of a legal title to the property in the trustee. *Headen* v. *Quillian*, 92 *Ga.* 220; *Henderson* v. *Williams*, 97 *Ga.* 709; *Bailie* v. *Carolina Loan Ass'n*, 100 *Ga.* 34; *Simmons* v. *McKinlock*, 98 *Ga.* 743. Where the legal title has been divested, the question whether the power of sale has been thereby extinguished depends upon whether the objects of the trust have been fully accomplished. See 2 Perry on Trusts (5th ed.), § 498; 2 Beach on Trusts, § 437, p. 1012. Where a trust has become executed and all the purposes for which the trustee was appointed have been fully accomplished, the power of sale ceases. As to this class of trusts, see *Carswell* v. *Lovett*, 80 *Ga.* 36; *McLaughlin* v. *Ham*, 84 *Ga.* 786, 792; *Lampkin* v. *Hayden*, 99 *Ga.* 363; *Parrott* v. *Dyer*, 105 *Ga.* 93; *City of Rome* v. *Shropshire*, 112 *Ga.* 93. But where a trust is created for a life-

estate, with a limitation over, under which no trust is created for the remainder, and the trustee is given power to sell the fee for the benefit of and with the consent of the life-tenant, as a general rule the power will not be extinguished merely because the trust for the life-tenant has become executed and the legal title is no longer in the trustee. The power remains in existence during the life of the life-tenant. The trustee, although the trustee of the power merely, is none the less a trustee. It is in each case important to ascertain the intention of the grantor in the trust conveyance, and this intention when ascertained will be controlling. See *Headen* v. *Quillian,* supra; *Bailie* v. *Loan Ass'n,* supra.

Did the grantor intend that the termination of the legal estate in the trustee should extinguish the power of sale? Or, looking at the whole instrument and considering its objects and purposes, did he intend that the power should survive the termination of the legal title in the trustee? We think it perfectly clear that Meredith, the grantor in the trust deed involved in the present case, intended that the trustee should have power to sell the fee. Civil Code, § 3171, which is a codification of the principle of decisions of this court made before the adoption of the Code of 1895, is as follows: " Where a trust deed, or other instrument, limits an estate in fee, for life or with remainders over, and in the same conveyance a power to sell, incumber, or otherwise dispose of the property is reserved or created, the power is to be construed to extend to a sale, incumbrance, or disposition of the fee, unless expressly or by necessary implication limited to a smaller estate." Nothing can be clearer than that the grantor intended to invest the trustee and his successors with power to sell the fee; for he said in so many words that the remainder in fee might be defeated and the trust estate aliened by deed of the trustee, in which the life-tenant should join. The language indicates a clear intention that the entire fee in the property should be sold whenever it was to the interest of the life-tenant to do so. If no trust was created for the remaindermen, then certainly the power of sale of the fee was given for the exclusive benefit of the life-tenant. Whenever a sale was deemed advisable by the trustee and the life-tenant, the proceeds of the sale were to be held " under the trust and limitations " set forth in the deed, that is, primarily for the benefit of the life-tenant, and to be reinvested in such a manner as would best subserve her inter-

ests.   The life-tenant was given the veto power, by refusing to join
in a conveyance of the fee ; and the conclusion is irresistible that
the grantor, when he provided for the power of sale, had in mind
primarily the welfare of the life-tenant.   There was no limitation
made upon the trustee and the life-tenant as to the character of re-
investment to be made; the main idea being to provide for income-
producing property during the life of the life-tenant, although it
might be property which would deteriorate in value by lapse of time,
and thus be worth less to the remaindermen than the property con-
veyed in the trust deed.   If there had been no limitation over in
the deed, doubtless the power of sale would have become extin-
guished upon the termination of the legal title in the trustee.   But
the trustee and the life-tenant being given absolute power of sale
over the entire fee, and it being the clear intention of the grantor
that this power should be exercised primarily, if not solely, for the
benefit of the life-tenant, those entitled to the estate in remainder
will not be be allowed to defeat the power, although the legal title
to the life-estate was taken from the trustee by the act of 1866,
and although no trust was created for the remainder, or, if so, it too
became executed by the passage of that act.   It was certainly not
intended that the act of 1866 should destroy a power of sale given
under such circumstances.   To hold otherwise would defeat the
plain and manifest intention of the grantor ; and no technical con-
struction which would have this effect will be adopted.   We do
not think there is any decision of this court which requires any
such construction.   No case has been called to our attention in
which a remainderman has been allowed to defeat a power of sale
over the fee, conferred for the benefit of the life-tenant, for whom
alone the trust was created.   We are satisfied that the grantor in
the deed under consideration intended that the power should be
kept alive during the life of the life-tenant, no matter what contin-
gency might happen.   He did not intend that the desires of a re-
mainderman should defeat or hamper the right of the trustee and
life-tenant to change the investment whenever in their opinion such
change was for the benefit of the life-tenant.   For this reason, the
fact that the sole remainderman had become sui juris would not
destroy the power of sale.   Having reached this conclusion from
a consideration of the language of the trust deed, this must be an
end of the controversy.   No law has been passed since the execu-

tion of the deed which would defeat this intention, if indeed any could be. The judgment in favor of the defendants was right, unless Mrs. Heath was not bound by the appointment of her husband as trustee, and unless, in the event she was not, she can be heard in this case to set this up as a reason for defeating the conveyance made by him.

2–5. The deed provided that in the event of the death, resignation, or removal from the State of the original trustee or any of his successors, another trustee might be appointed by the life-tenant. Houston, the predecessor of Heath, was appointed in this manner. He did not, however, die, resign, or remove from the State, but was charged with having been guilty of such conduct as rendered it no longer proper for him to continue in office. For this reason, application was made to a court of equity to remove him. The court certainly had power to do this in a proper case made. We reached the conclusion in the foregoing part of this opinion that it was necessary for the trustee to continue in office to exercise the power of sale conferred in the deed. The judges of the superior courts in this State have now, and had in 1867, power at chambers to appoint and remove trustees. Civil Code, § 3164; Code of 1863, § 2301. It is said, though, that the judge of the superior court of Richmond county had no jurisdiction of the proceeding, because the petition shows on its face that the applicants and the respondent Houston were all residents of Burke county. The fact that the applicants did not reside in Richmond county could, of course, make no difference, if the court had jurisdiction of the respondent. The caption of the petition was " Georgia, Richmond county," and the petition was addressed to the judge of the superior courts of the Middle circuit, of which both Richmond and Burke counties were a part. The rule nisi was returnable in Richmond county, on June 22, 1869, and the record shows an entry of service of the rule on Houston in Burke county. The proceedings were ordered to be recorded on the minutes of the superior court, but the order did not say whether of Richmond or Burke county, merely declaring that the recording was to be done " as usual in such cases." The order removing Houston was passed on July 15, 1867, in Richmond county, and recited that Houston had failed to appear in answer to the rule nisi. If the court had no jurisdiction of Houston, the order removing him was void on its face, and can be treated as

a nullity.   The constitution provides that "equity cases" shall be
tried in the county where the defendant resides against whom sub-
stantial relief is prayed.   Civil Code, § 5871.   A similar provision
was in the constitution of 1865.   See Code of 1868, § 4967.   The
application to remove Houston, addressed to the judge at chambers,
was not "a case" within the meaning of these provisions.   They
relate only to equitable petitions filed in the superior court and upon
which a trial by jury may or must be had.   The judge had juris-
diction of this matter at chambers; and he could pass an order at
any place in his circuit, binding any resident of his circuit who
was duly served, though he may have resided in a county other
than that in which the order was passed.   While the record of the
proceedings upon the minutes of the superior court of Richmond
county may have been irregular, it did not make the order remov-
ing the trustee invalid.   The judge had jurisdiction of the sub-
ject-matter and jurisdiction of the person of the trustee, and the
order was valid whether the proceedings were ever recorded any-
where.   As no such record was required to give validity to the
order, it of course would make no difference that the proceedings
were recorded in the wrong county.

It is not necessary in the present case to decide in what county
the proceedings to remove and appoint trustees should be filed if
returnable in term, or where recorded if returnable at chambers.
The code is silent on the subject, merely declaring that the peti-
tion, etc., "shall be returned to the clerk of the superior court, to be
recorded in the book of minutes of said court." Civil Code, § 3164.
In ex parte proceedings by beneficiaries praying for the appoint-
ment of a trustee, it would seem they might be instituted in any
county where any of the beneficiaries resided.   In proceedings to
remove a trustee, as he is the defendant, it would seem that the
county of his residence would be the proper county.   On the other
hand, as in all cases the proceedings for appointment and removal
are a part of the muniment of title to the property, it might with
great force be maintained that they should be had in the county
where the property is located.

The fact that the hearing was not had at the date fixed in the
rule nisi, but at a later date, would not vitiate the order, as there
will be, after the lapse of more than thirty years, a presumption that
an order had been passed duly continuing the hearing to July 15,

the time when the final order removing the trustee was passed. The judgment, therefore, removing Houston and appointing Heath as trustee was not void, but was valid and binding on all who were parties to the proceeding; and when Heath was appointed he succeeded to all the rights and powers of, and was bound by all the limitations imposed upon, the original trustee in the trust deed. The power of sale was not a personal trust confided to the original trustee, the deed distinctly providing that it might be exercised by "his successors," that is, any one who should succeed him in any manner authorized by law. In three contingencies the deed provided how the successor was to be appointed. The court of chancery has always had the power to appoint a trustee, when the instrument creating the trust did not make provision for the appointment. It is to be presumed that the grantor was fully aware of this authority in the court and executed the deed in the light thereof. See, in this connection, *Freeman* v. *Prendergast*, 94 *Ga.* 369 (1).

Will Mrs. Heath be heard now to attack the judgment appointing her husband trustee, on the ground that she did not authorize any one to make her a party to the proceeding? Let us look at the matter first as if she had brought, in 1899, a direct proceeding to set aside the judgment appointing Heath as trustee. She was of age when the appointment was made. She waited thirty-two years before calling the judgment in question, long after rights had become vested and successive transfers of the property had been made by persons resting in fancied security arising from a title authorized by a solemn judgment of the court. Certainly it ought to take a strong case, after so long a time, to destroy a title made under such circumstances. Mrs. Heath was named as a party in the application, and licensed attorneys appeared claiming to represent her as well as other persons therein named. The strong presumption is that these attorneys had authority to do so. The entry of appearance by the attorneys was made by them as officers of the court, and in order to set aside that entry "the strongest and most satisfactory evidence" is required. *Davant* v. *Carlton*, 57 *Ga.* 489, 492, and case cited. The evidence of Mrs. Heath on this point is meager and unsatisfactory. She does say in positive terms that she did not authorize the attorneys to represent her. But she does not give any reason for the long delay in attacking the judgment,

and she does not show even that she did not know of the proceeding at the time.　Indeed, the contrary is inferable from her testimony; for she says she knew nothing of the petition, further than that she was informed that attorneys representing Mrs. Cavender were going to bring proceedings to remove Houston as trustee for misconduct. Knowing this, was it not incumbent on her to appear and object to his removal, or, if she approved of his removal, ask to be heard on the question of his successor? If she had the right to be heard at all on the question, she had a corresponding right to attack the appointment in a direct proceeding after it was rendered. Having this right, she ought to have moved to set aside the entry of appearance by the attorneys in her behalf, in a reasonable time after she had notice of such entry. She does not show that she did not know of the appointment, nor that she did not know that the attorneys had appeared as representing her; but she does show that she knew enough to put her on inquiry. If she had followed up the information she had, she would have known, and the presumption is, in the absence of a contrary showing, that she did know. While Mrs. Heath could not, until after 1896, bring a suit to recover the land, we do not see why it was necessary for her to wait until after the death of the life-tenant to attack the judgment. She was of age; she was vested with the legal title to the remainder, and if, in order to protect the fee, it was necessary to move to set aside the judgment appointing Heath as trustee, she should have done so as soon as she acquired knowledge of his appointment. It will not do to say that she did not know a sale was contemplated; because she was chargeable with knowledge that the power to sell the fee became vested in the trustee by the appointment, and it was her duty to be on her guard and take steps to protect her interests. When it is remembered that Heath, the trustee, was her husband, the presumption becomes almost conclusive that she knew all about the appointment and the sale long ago, and that the explanation of her long delay lies in the fact that she has but recently concluded that the appointment and sale were invalid as to her. She can not now be heard to attack the validity of the judgment or the deed made in execution of the power to sell the fee by the trustee and the life-tenant.　See *Bigham* v. *Kistler*, 114 *Ga.* 453 (3), 460-461; *Turner* v. *Jordan*, 67 *Ga.* 604.

The presumption in favor of an appearance by an attorney hav-

ing been authorized is still stronger where a collateral attack is
made upon the judgment rendered in the case in which the attorney
appeared, and no direct proceeding to set aside the judgment has
been brought.    Indeed, many courts have held that in such a case
the presumption is conclusive.    See, in this connection, 1 Freem.
Judg. (4th ed.) § 128; 2 Id. § 499.    A judgment absolutely void
is open to attack anywhere and by anybody ; but no other judgment
is open to collateral attack.    Civil Code, §§ 5373, 5368.    Where a
judgment is apparently valid on its face, a direct proceeding to set
it aside must be brought.  *Dixon* v. *Baxter*, 106 *Ga.* 180.  Of course
a judgment rendered against a defendant without service is void
and may be treated as a nullity.     But if the record should show
an entry of service by the sheriff, the judgment would be binding
so long as this entry stood untraversed.     *Davant* v. *Carlton*, 57
*Ga.* 489.    An attorney is as much an officer of the court as the
sheriff, and his entry of appearance ought to be just as sacred as
the sheriff's entry of service.  Reasoning along this line, it was held
in the case just cited that a confession of judgment by an attorney
of record, although unauthorized, could not be treated as a nullity
until traversed and found by a jury to have been unauthorized; al-
though in *McBride* v. *Bryan*, 67 *Ga.* 584, it was held that an un-
authorized confession of judgment by an attorney could be collat-
erally attacked when the defendants were not served.     In the
present case the record in the proceeding in which the judgment
attacked was rendered recited that Mary J. Heath was a party
plaintiff.    The judgment was, therefore, not void on its face.  That
record further shows that attorneys appeared to represent her.   The
judgment, therefore, bears on its face all the indicia of regularity
and validity ; and it would seem that such a judgment ought not
to be open to collateral attack.    See, in this connection, *Clews* v.
*Bondholders*, 51 *Ga.* 132 (2).    Much, however, could be said on
the theory that a judgment can never bind a person who is neither
a party nor a privy ; and that whenever one shows that he was not
a party and had never appeared either in person or by an author-
ized representative, the judgment is void as to him.    We do not
hold in this case that a judgment entered against a person in a pro-
ceeding to which he was not in fact a party, although attorneys ap-
peared purporting to have authority to represent him, can not be
collaterally attacked and shown to be void.    There is nothing in

this case calling for such a ruling, even if it would be correct. But we do hold that the presumption in favor of the authority of the attorney ought to be stronger where the judgment is collaterally attacked long after its rendition, and when the attorney is given no opportunity to be heard in answer to the claim that his appearance was wholly gratuitous and unauthorized. In such a case there ought to be something more than the mere unsupported testimony of the person making the attack. But the testimony of the plaintiff in this case, even if her unsupported testimony would be sufficient, is, as has been shown, entirely too weak and unsatisfactory to warrant the court in disregarding a solemn judgment, on its face regular and valid, rendered more than thirty years before its validity was called in question.

There was no error authorizing the granting of a new trial.

*Judgment on the main bill of exceptions affirmed; cross-bill dismissed. By four Justices. Lamar, J., disqualified.*