ANDERSON *et al. v.* CRAWFORD.

1. A judgment rendered against a party, either plaintiff or defendant, upon a wholly unauthorized appearance of an attorney, if the act of the attorney be not ratified, will be set aside in a direct proceeding for that purpose, in law or equity, if the party is not guilty of unreasonable delay after notice or knowledge of the judgment; and this relief will be granted irrespectively of the solvency of the attorney making the appearance.
2. Where one, wholly without his authority, has been made a party plaintiff to litigation, and thereafter, but before judgment, receives informal notice of such fact, his failure to appear and move that the court strike his name from the record will not, in all circumstances and as a matter of law, amount to a ratification of the unauthorized act of the attorney in so making him a party.
3. The court did not err in directing the verdict.

No. 166.　DECEMBER 14, 1917.

Equitable petition. Before Judge Bell. Fulton superior court. December 15, 1916.

On the first day of August, 1911, in the superior court of Fulton county, a suit was filed against Mrs. M. B. Crawford. James M. Crawford, a brother, three sisters, and the children of a deceased brother were named as plaintiffs in the suit. The purpose of the suit was to declare null and void the marriage of Mrs. M. B. Crawford to J. B. Crawford, the deceased brother of James M. Crawford, and to recover from the defendant the estate of J. B. Crawford. In January, 1913, in the same court, another suit was filed against Mrs. M. B. Crawford and others. The petition in this second suit alleged that James M. Crawford and his brothers and sisters, who were likewise named as plaintiffs, were the children of William Crawford, deceased, and were the brothers and sisters and the representatives of the deceased brothers and sisters of J. B. Crawford, deceased. The purpose of this suit was to recover the estate of J. B. Crawford from the widow, Mrs. M. B. Crawford, and for other relief. These petitions were filed by a licensed attorney at law for the plaintiffs. The two suits named were consolidated and referred to James L. Anderson as auditor, before whom the consolidated cases were tried from the spring of 1913 until January, 1914. The suits resulted in judgments in favor of the defendant, Mrs. M. B. Crawford. On the sixth of July, 1914, in these consolidated cases a judgment in favor of James L. Anderson for his fees as auditor was rendered against James M. Crawford and the others named as plaintiffs, for the principal sum

of $1000, with interest and costs. The judgment and execution issued thereon were transferred by James L. Anderson to the plaintiff in error, Robert L. Anderson. In February, 1916, this execution was levied on land of James M. Crawford. On February 29, 1916, James M. Crawford filed his petition against James L. Anderson, Robert L. Anderson, and the sheriff of Fulton county, to enjoin them from enforcing the execution as against the said James M. Crawford only, and to set aside the judgment upon which it was based as to James M. Crawford. In this petition James M. Crawford averred, that, until levy and service of notice upon him by the sheriff, he had no knowledge of the existence of the judgment upon which the execution issued; that he did not know that he was named as a plaintiff in said suits; that he did not employ the attorney, nor authorize him to use his name as plaintiff or to file or prosecute said suits in his behalf; that he did not take any part in said suits, and had not ratified the use of his name in the suits. On the trial James M. Crawford admitted knowledge of the filing of the suits by his brother and sisters, but disclaimed any knowledge that he was named in either of them as a party plaintiff. He did not believe that the suits against Mrs. M. B. Crawford were well founded in law or in fact, and did not employ any one to make him a party to the litigation. He read the newspaper accounts of the suits, but did not understand therefrom that he was a party plaintiff. He did not appeal' to the court to have his name stricken from the cases, and in fact had no knowledge that his name appeared in the suits. He was an invalid at all times during the pendency of the litigation, and was confined to his home the greater part of the time. Mrs. M. B. Crawford and her agent, Cox, testified substantially to the following facts: Shortly after the filing of the suits, and before judgments therein, James M. Crawford was informed that his name appeared as a party plaintiff in each of the suits. He at once promptly disclaimed any connection with the suits, and stated to the witnesses that the Jim Crawford named in the suits was intended to refer to Jim Crawford of Carroll county. He was advised that the James M. Crawford named in the suits was alleged therein to be a son of William Crawford, and he then admitted that he was the son of William Crawford. He was repeatedly advised of the pendency of these suits and of the fact that he was named as a party plaintiff

therein. To the defendant and her agent he at all times disclaimed any interest in the suits or authority in any one to institute or prosecute them in his name, and stated that he did not believe them to be well founded in law or in fact. James L. Anderson, the auditor, testified to the facts appearing of record, and to the fact that the case as heard before him as auditor attracted public interest and was frequently referred to in the newspapers published in Fulton county. He admitted that James M. Crawford did not appear in the case and did not testify. The judgment and execution with the transfer, and the petitions in the two suits against Mrs. Crawford, were in evidence. The court directed a verdict in favor of James M. Crawford in accordance with the prayers of his petition; and a decree was entered, enjoining the enforcement of the execution and setting aside the judgment as to James M. Crawford. The defendants excepted.

*George Westmoreland* and *James L. Anderson,* for plaintiffs in error. *Candler, Thomson & Hirsch,* contra.

GEORGE, J. (After stating the foregoing facts.)

1. On the effect of a judgment rendered against a party upon the unauthorized appearance of an attorney, there is great contrariety of opinion. According to the earlier English decisions, followed even at the present time in a number of jurisdictions, it is held, that the appearance of an attorney for a party, though without authority, is deemed sufficient to give the court jurisdiction over his person, and that upon such an appearance the court will proceed to judgment and leave the party to his remedy against the attorney, unless the attorney be insolvent, or appear under suspicious circumstances, or be acting in collusion with the adverse party. Latuch *v.* Pasherante, 1 Salk. 86; Bunton *v.* Lyford, 37 N. H. 512 (75 Am. D. 144); Town of St. Albans *v.* Bush, 4 Vt. 58 (23 Am. D. 246). Many of the courts have recognized a distinction between a foreign and a domestic judgment, holding that a judgment of the former class, rendered upon the unauthorized appearance of an attorney, may be set aside in equity, where the party has promptly, after knowledge of the judgment, applied for the relief; while relief will not be granted against a domestic judgment. The authorities are not in accord upon the remedy of the party. Some of the courts recognize the right, where the right exists, to have the judgment set aside on motion, while others re-

quire that the relief can only be had in a court of equity. The weight of authority is to the effect that the relief must be obtained in a direct proceeding; and that the judgment, appearing to be regular upon its face, is not subject to collateral attack. The decisions are in further conflict, as may be deduced from the foregoing, as to whether such a judgment is void, or only voidable, or absolutely conclusive. Harshey *v.* Blackmarr, 20 Iowa, 161 (89 Am. D. 520).

For the purposes of this case it is unnecessary to enter into a general discussion of any of the foregoing questions. The rule in this State is recognized in Dobbins *v.* Dupree, 39 *Ga.* 394 (2), as follows: "Though an attorney who appears and confesses judgment for a suitor is prima facie to be taken as having been retained by the suitor, yet if the fact be otherwise, the court will, upon proof to that effect, set aside the judgment." This is the general rule now recognized by the English courts and the courts of the majority of the American States. In *Turner* v. *Jordan,* 67 *Ga.* 604 (2), it was ruled that "a judgment against an administrator, who was made a party by consent of counsel who did not represent him (though he had represented the intestate), and without his knowledge, before the expiration of the first year of his administration, could be set aside in a court of law with proper pleadings and with all parties in interest as parties to the motion, the motion being made at the first term after notice to the administrator." In *Longman* v. *Bradford,* 108 *Ga.* 572 (33 S. E. 916), it was ruled that "if an attorney at law, in violation of express instructions, causes his client to be made a party to pending litigation, the latter is not bound by any judgment therein rendered, but may repudiate the same, and, if he is the only person sought to be charged thereby, may by appropriate and timely proceedings have such judgment set aside." In the course of the decision the following extract from 2 Enc. Pl. & Pr. 690, is quoted. "The clear weight of authority, and the true rule of law on principle, is that a domestic judgment rendered against a person without any service of summons upon him and without any appearance by him, and only upon an appearance made by an unauthorized attorney, which appearance has never been ratified or confirmed, is absolutely void as to the person for whom the appearance was made." 2 Black on Judgments, § 903, p. 1081, is also quoted by the court approvingly.

Such portion of the quotation as is material here is as follows: "So also, where the judgment was against the plaintiff for costs, and he is sued upon it in another State, he may defend by showing that he gave no authority to institute such suit and had no knowledge thereof before judgment was 'rendered." The general rule seems to be that a plaintiff, who has been made a party to litigation without his authority or assent, may have relief against a judgment in the same circumstances which would induce a court of equity to grant relief to the defendant in a converse case. 1 Black on Judgments, § 374. In *Heath* v. *Miller,* 117 *Ga.* 854 (3), (44 S. E. 13), the right to have relief against a judgment entered upon the unauthorized appearance of an attorney is recognized; but it is said that there is a strong presumption that the attorney had the authority to make the appearance, and that this presumption increases in strength with lapse of time, and where "after the expiration of more than thirty years after the judgment a direct attack is made upon the authority of the attorneys,. by a motion to set aside the judgment rendered in the case, the strongest and most satisfactory evidence is required to overcome the presumption." In *Morris* v. *Warlick,* 118 *Ga.* 421, 423 (45 S. E. 407), the question involved in this case was discussed, and the following excerpt from the opinion in that case would appear to be very much in point: "The court was asked to award a nonsuit, and also to grant a new trial, on the ground that Mrs. Haig, one of the plaintiffs, had not authorized the suit, which was for a joint cause of action, and that, this being so, the action would fail as to all the plaintiffs. Counsel appeared in court claiming to represent Mrs. Haig, and their authority to do so was not called in question, nor was there evidence of any character showing that she had repudiated the action of counsel in making her a party plaintiff. See *Heath* v. *Miller,* 117 *Ga.* 854. A letter from her, offered for this purpose, was properly excluded, as there was nothing in the letter which would have authorized the court to find that she desired the suit discontinued as to her. On the contrary, the letter showed that she knew of the suit, and failing to appear and move to have her name stricken amounted to a ratification of the action of counsel in making her a party, even if it was unauthorized." The precise question before the court'in that case was whether or not the letter offered in evidence by counsel for the de-

fendant was admissible. It was ruled that the letter was properly excluded, "as there was nothing in the letter which would have authorized the court to find that she desired the suit discontinued as to her." The court, in its opinion, then proceeded to say that "the letter showed that she knew of the suit, and failing to appear and move to have her name stricken amounted to a ratification of the .act of counsel in making her a party, even if it was unauthorized." This statement, we think, is obiter dictum. When the letter was ruled to be inadmissible in evidence because there was nothing in the letter which would have authorized the court to find that the plaintiff desired the suit discontinued as to her, mere speculation upon the effect of such evidence, had it authorized the court to find that the plaintiff desired the suit discontinued and dismissed as to her, does not amount to an authoritative ruling binding upon this court. *Dix* v. *Dix*, 132 *Ga.* 636 (64 S. .E. 790). It is settled in this State that a judgment rendered against a party, either plaintiff or defendant, upon a wholly unauthorized appearance of an attorney, if the act of the attorney be not ratified, will be set aside, in law or equity, if the party is not guilty of unreasonable delay after notice or knowledge of the judgment, and this relief will be granted irrespectively of the solvency or insolvency of the attorney making the appearance.

2. This case really turns upon the determination of the proper time to object. It must be conceded that the evidence in the record would authorize the jury to find that the defendant in error knew or had notice of the pendency of the suits against Mrs. Crawford, and knew or had notice that he was named as a party plaintiff in these suits, sometime before the cost judgment was rendered against him. Reverting to general authority upon the precise question here involved, it is generally said: "The party for whom the appearance has been entered, if without knowledge of that fact, may object at any time on being informed thereof, even after judgment. But a suitor who does not disclaim the authority of an attorney who assumes to represent him in an action, after he has acquired knowledge thereof, can not do so afterwards. He can not take the hazard of a trial, and, when unsuccessful, allege as ground for vacating the judgment that the attorney who conducted the trial had no authority." 1 Thornton on Attorneys at Law, 431, § 238; cf. also 2 R. C. L. 982; Bacon

*v.* Mitchell, 14 N. D. 454 (106 N. W. 129, 4 L. R. A. (N. S.) 244) ; McIlhenney *v.* Binz, 80 Tex. 1 (13 S. W. 655, 26 Am. St. R. 705) ; Haddock *v.* Wright, 25 Fla. 202 (5 So. 813) ; Abbett *v.* Blohm, 54 App. Div. 422 (66 N. Y. Supp. 838). In Smyth *v.* Balch, 40 N. H. 363, it is ruled that where an attorney brings a suit without any authority from the plaintiffs, and the defendant obtains a judgment for costs, a court of equity will restrain the enforcement of such judgment by injunction, if it be shown that the suit was brought without the knowledge or assent of the plaintiffs and without their authority, and if the attorney was poor and unable to respond. In Watson *v.* New England Bank, 45 Mass. (4 Metc.) 343, it is held: "In an action in this State on the judgment of a court in another State, rendered for cost against a plaintiff in a suit commenced there, he may defend successfully by showing that he gave no authority to institute such suit, and had no knowledge thereof before judgment was rendered therein." In Hurste *v.* Hotaling, 20 Neb. 178 (29 N. W. 299), the Supreme Court of Nebraska recognized the right of one, who had been made a plaintiff to a suit without his authority or assent, to relief against a judgment rendered against him, upon the ground that there was no "proof of knowledge of the pendency of the proceedings on the part of the plaintiff, or proof of authority to bring the action." In the opinion in this case by Maxwell, C. J., it is said: "Had she [plaintiff] been aware of the pendency of such proceedings, and made no objection, it would now be too late to object." The Supreme Court of Iowa, in Oxtoby *v.* Henley, 112 Iowa, 697 (84 N. W. 942), a case decided in 1901, approved the following instruction to the jury: "If defendant knew that there was a case pending in which she was joined as plaintiff, and allowed the case to go to judgment without objection, it was a ratification of the act making her plaintiff." This charge, however, was approved upon the special facts of the case; and the facts were that the defendant was informed by the attorney bringing the suit that she had been made a plaintiff on suggestion of other plaintiffs who were closely related to her, and gave her testimony to be used in the hearing of the case, and further inquired of counsel concerning the probability of advantage to her resulting from the litigation. In the foregoing cases, relief to the plaintiff against whom a judgment had been rendered upon the unauthor-

ized appearance of an attorney was predicated, it would seem, upon the party's lack of knowledge of the pendency of the proceeding in which he was named as plaintiff. In the light of these cases, we think it must be accepted that when James M. Crawford was informed that he was a party plaintiff in the suits against Mrs. Crawford, had he merely remained silent, the judgment rendered against him for cost would bind him. But, assuming that his contention is the truth of the case, he knew that he had not employed an attorney to bring the suits, that he had not authorized the bringing of the suits in his name, and that he in fact had nothing whatever to do with the same. When he received informal information that he was named in the suits as a plaintiff, he promptly disavowed the suits. This disavowal was made to the defendant, the only party who could be affected by a judgment in his favor; and we think, upon the authority of *Hall* v. *Lockerman,* 127 *Ga.* 537 (56 S. E. 759), this repudiation estopped him to claim anything under any judgment that might be thereafter rendered against the defendant. It is true that Mrs. Crawford continued to defend the suits after this repudiation by James M. Crawford; but it must be remembered that there were other plaintiffs to the suits, and any one of the plaintiffs had the right to compel the defendant to litigate the questions involved in the suits. The plaintiffs in error were not parties to these suits, and whatever rights they have in the judgment grow out of the right of the defendant, Mrs. Crawford, the prevailing party, to assert the same for their use. We do not agree that the failure of one to appear and move to have his name stricken from a suit which he has not authorized, where he has informal notice of such suit before judgment therein, will in all circumstances, and as a matter of law, amount to a ratification of the act of counsel in making him a party thereto. Silence under the circumstances, or a total failure to disclaim the authority of counsel to bring the suits, will amount to ratification. If James M. Crawford, promptly upon information conveyed to him, disclaimed any interest in or connection with the suits against Mrs. Crawford, and if this disclaimer was made to the adverse party in good faith and was not equivocal, he may have relief against the judgment, although he did not appear and formally move the court to strike his name from the records. To hold otherwise

would place an unreasonable burden upon him. His failure to have his name formally stricken has not, in this case, prejudiced the rights of third parties; and no question of public policy would appear to be controlling here, since the suits must have gone on to final judgment had the name of James M. Crawford been stricken therefrom.

3. The remaining question is, was the court authorized to direct a verdict for the defendant in error? The majority of the court are of the opinion that no verdict other than the one directed was authorized under the evidence. Mr. Justice Hill and the writer do not agree to this view, for the following reasons: The judgment against James M. Crawford is regular upon its face. There is a strong presumption that the licensed attorney of record was authorized to name him as a plaintiff to the suits. This presumption is not a conclusive one, but is nevertheless a strong one, and before it can be overturned clear and satisfactory proof is required. The defendant in the suits was the widow of the brother of James M. Crawford. When confronted by her with the proposition that he had brought suits against her, and therein had charged her with criminal conduct, even the murder of her husband, he disclaimed any knowledge of the suits and stated to her that he had not authorized the same, but he wholly failed to go into court and have his name stricken from the suits. In the peculiar circumstances of the case, the jury might have concluded that the disclaimer made by the defendant in error was not in good faith, or at least was equivocal. This being true, the court should not have directed a verdict. The majority opinion on the question, however, necessarily results in an affirmance of the judgment.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent, and Hill and George, JJ., who dissent as to the ruling in the third headnote.*