## SIMMONS *v.* McKINLOCK.

1. Where a deed conveyed land to a named person in trust for a. married woman for life, and at her death to her children then living, "with power in said trustee, by and with the written consent of the [life-tenant], to sell said property and reinvest the same in other property, subject to the same limitations and restrictions," the power thus created conferred upon the trustee a special personal trust, and was therefore one which did not pass to a successor.

2. Where the *cestui que trust* for life, in such deed named, in 1867 presented to the judge of the superior court in her own behalf alone an application which dealt with the trustee in so far only as he held in trust for her, alleged that he was ready and willing to resign "the said trust," and prayed for the appointment in his stead of her husband as trustee for her, the application being accompanied by a resignation on the part of the trustee, describing him as trustee for her but making no reference to any other person as *cestui que trust*, an order passed thereon making the substitution of trustees as prayed for was not valid and binding upon any persons who were not parties to that proceeding.

3. It was, therefore, not lawful for the judge, upon such an application (it having been made since the adoption of the code), without service upon or notice to children of the life-tenant then in existence, to make any change of trustees as to them; and in so far as the order in question undertook to do this, it was void.

4. The effect of the order as passed, however it may have affected the life-tenant, was to leave the person designated as trustee in the deed still trustee for the children, and, as such, he retained the power of sale conferred by the deed.

5. It follows that, as against the trustee of the children or as against them upon reaching majority, they having no right to possession and consequently no right to sue until after the death of the life-tenant, no prescription ran, while she was still in life, in favor of persons holding under her trustee, though

the latter had undertaken to sell and convey the property in fee simple.

August 10, 1896.

Complaint for land.   Before Judge Lumpkin.   Fulton superior court.   September term, 1895.

*P. F. Smith, R. L. Sibley* and *Kontz & Conyers,* for plaintiff in error.
*Arnold & Arnold, J. C. Reed* and *H. B. Moss,* contra.

LUMPKIN, Justice.

On February 13th, 1894, Mrs. Julia T. McKinlock brought an action of ejectment for an undivided half of a described parcel of land, in the county of Fulton and city of Atlanta, against a tenant of Henry Simmons, who, being the real claimant, was made a party and defended the action.

In 1861, David Demorest, who then owned this land, conveyed it to Calvin W. Hunnicutt, "trustee of and for Susan C. Taylor, wife of James A. Taylor, and her children, . . to have and to hold . . unto him, the said Calvin W. Hunnicutt, trustee of Susan C. Taylor and her children, for the sole and separate use of the said Susan C. Taylor, during her natural life, and at her death for the children of the said Susan C., then living, . . with power in the said trustee, by and with the written consent of the said Susan C. Taylor, to sell said property and reinvest the same in other property, subject to the same limitations and restrictions, and with the same power." Mrs. Taylor had two children, both of whom were in life when this deed was executed. She died in 1893. Both of these children survived her, one of them being the plaintiff in the present action. Mrs. Taylor and her children resided on the lot in question until about 1868. On December 4th, 1867, she presented to the Hon. John Collier, then judge of the superior courts of the Coweta circuit (which

at that time included the county of Fulton), a petition in the following words:

"The petition of Susan C. Taylor showeth that Calvin W. Hunnicutt, of said county and State, is in the possession of real and personal property to the amount of about ten thousand dollars, in trust for your petitioner, and that she is anxious and desirous of having James A. Taylor, her husband, appointed trustee in the place and stead of the said Hunnicutt. Your petitioner further shows that the said Calvin W. Hunnicutt is ready and willing to resign the said trust, and to turn over to the said James A. Taylor all of the trust property in his hands, upon the passing of the necessary order by your honor, and 'that the said Taylor is ready to accept the said trust. Wherefore, your petitioner prays your honor to grant the necessary order appointing the said James A. Taylor trustee for your petitioner, and vesting in him all powers to act as such. And your petitioner will ever pray, etc.

Susan C. Taylor, (L. S.)."

Upon this petition was an entry in the following words:

"I, C. W. Hunnicutt, trustee for Mrs. Susan C. Taylor, wife of James A. Taylor, hereby consent to be relieved and discharged as said trustee, and recommend the appointment of her husband, James A. Taylor, as trustee in my stead. This Dec. 4th, 1867. C. W. Hunnicutt."

Judge Collier passed the following order:

"At Chambers, December 7th, 1867.

"The foregoing petition read and considered. It is ordered that James A. Taylor be and he is hereby appointed trustee of Mrs. Susan C. Taylor and her children, in the stead of Calvin W. Hunnicutt, who has resigned his trust. The said James A. Taylor to hold the property herein mentioned for the said Susan C. and her children, but not to sell or encumber the same or any portion thereof without first obtaining an order from the chancellor for that purpose. It is further ordered that the foregoing petition and this order be entered upon the minutes of the superior court of Fulton county by the clerk thereof, upon payment of the usual fees.

John Collier, Judge Superior Court, C. C."

On March 4th, 1868, a deed was executed by James A. Taylor, "trustee of Susan C. Taylor," purporting to convey the land now in dispute to Henry F. Emery, in fee simple. This deed recited that it was made "by virtue of an order granted by Hon. John Collier, Judge of Superior Court of the Coweta circuit, on the 24th of February, 1868"; but no such order was introduced in evidence. Emery conveyed to Simmons on April 7th, 1868, and he has ever since been in the adverse, peaceable, uninterrupted and continuous possession of the property, claiming it *bona fide* as his own, with no knowledge of any claim by any other person, until the present action was brought.

Upon this state of facts, the judge directed a verdict for the plaintiff, and Simmons excepted.

1. It seems quite clear that the deed from Demorest to Hunnicutt, trustee, conferred upon the latter a special, personal trust. It was discretionary in its nature, and therefore, one which would not pass to a successor. In this view, the able counsel on both sides of this case concurred. See Perry on Trusts, §§473, 496, 508(x); Cole *v.* Wade, 16 Ves. Jr. (Sumner's ed.) 27.

2. Mrs. Taylor's application to Judge Collier for a change of trustees was in her own behalf only. It makes no mention of her children. An examination of it will show that it does not contain a single word intimating that any change of trustees was contemplated or desired as to them. The same thing is true as to the writing signed by Hunnicutt. It begins by describing him as "trustee for Mrs. Susan C. Taylor," and he therein consents to be relieved and discharged "as said trustee," and recommends the appointment of her husband as trustee in his stead. The order of the judge undertook to make the substitution of James A. Taylor, as trustee in the place of Hunnicutt, apply to the children as well as their mother. Was this order valid at all; and if so, to what extent?

We see no reason why it should not be regarded as

lawful and binding upon Mrs. Taylor and upon Hunnicutt, in so far as he was trustee for her. The judge had jurisdiction of the subject-matter and of the parties before him, and they were *sui juris*. Why, then, could he not grant Mrs. Taylor's prayer that her husband be made trustee for her in the place of Hunnicutt; and why could not the latter resign so much of his trusteeship as related to Mrs. Taylor, and retain his trusteeship for the children? This is all Mrs. Taylor and Hunnicutt asked; and if it was within the power of the judge to grant that much, ought his order to be treated as a nullity because it granted something which was not prayed for and embraced matters beyond the scope of the petition? We think not. So the real question is: Was a trust of this nature divisible?

This court, in the case of *Lamar* v. *Pearre*, 82 *Ga.* 354, decided that a trust of a very similar nature was divisible,. holding that where a person was trustee of a married woman for life, and of her children in remainder, a new trustee could be appointed for the life-tenant only, leaving the original trustee still clothed with the trust for the remaindermen, notwithstanding his discharge as trustee for the beneficiary of the life-estate. The decision in that case, if correct (and upon a review of it, we hold that it is), absolutely settles the question with which we are now dealing, unless the trust in the present case was rendered indivisible because of the power of sale conferred upon Hunnicutt. It was strenuously insisted by counsel for the plaintiff in error, that to hold this trust divisible in the manner stated would, in effect, utterly destroy the scheme of the grantor, Demorest, as manifested by his deed to Hunnicutt, because a division of the trust would put an end to the power of sale, and thus deprive all the beneficiaries, including both the life-tenant and the remaindermen, of the advantage to be derived from the exercise of that power by the trustee. If substituting James A. Taylor in the place of Hunnicutt as trustee of Mrs. Taylor, and at the same time leaving him

still in office as trustee for the children, would result in destroying the power of sale, the question for determination would be by no means easy of solution.   But we are relieved of the difficulty of solving it, because we have with confidence reached the conclusion that the power of sale was not extinguished by Judge Collier's order, but still remained in Hunnicutt even after he had ceased to be the trustee of Mrs. Taylor and was trustee of her children only. It can no longer by doubted that a trustee may have and exercise a power of sale as to property, or an interest therein, to which he has not the legal title. · See *Henderson et al.* v. *Williams*, 97 *Ga.* 709, following *Headen et al.* v. *Quillian et al.*, 92 *Ga.* 220.   Note the remarks of Chief Justice Bleckley on page 222.   So, in the present case, Hunnicutt, after the appointment of Taylor, could have sold not only the remainder interest which he represented, but also the life-estate of Mrs. Taylor.   And as he could make no sale at all without her written consent, no hardship could have resulted either as to her or as to the remaindermen.   The following authorities are pertinent in support of the proposition that the power of sale remained unimpaired in Hunnicutt even after he had ceased to be trustee for Mrs. Taylor.

The first of these is Trower *v.* Knightley, 6 Madd. 134, in which it was held that "where an estate is devised in trust for two daughters for life, with remainders in each moiety for their children at twenty-one, and a power of sale is given to the trustees, the power of sale subsists though one daughter is dead and her children have attained twenty-one."   In the case just cited, it would seem that the interest of the children of one of the daughters had become actually vested, all of them having attained majority, and consequently, that they were removed from the trust because their estate had become a legal one.   This being so, the trustees merely represented one half of the interest they had represented originally; and yet, the vice-chancel-

lor held that the trust, as to one moiety, necessarily continued for all purposes until the children of the other daughter attained twenty-one, and also, that the power of sale continued over the whole property. The reasons for this conclusion would seem to be that to hold otherwise would have the effect of depriving the second daughter and her children of the benefit of the power of sale, and that this power could not advantageously be exercised without making it applicable to the whole estate.

Again, in Taite *v.* Swinstead, 26 Beav. 525, it appeared that "An estate was devised to trustees for different persons in fifth shares, some of which shares were given to living persons absolutely, and the others to living persons for life, with remainder to their children in fee. An unlimited power of sale over the whole estate was given to the trustees." And it was held "that this power of sale was valid and could be exercised over the whole estate, so long as any of the trusts of any of the shares remained to be performed." The master of the rolls remarked (see pp. 530, 531): "I think the intention clear; the estate is given in five fifths, two of them in settlement to husband and wife for their lives in succession, with remainder to their children, with a gift over in case of no children, and the remaining fifths are given to persons in fee. The power of sale is unlimited and overrides the whole estate. I think that the testator intended the power of sale to last as long as any one of the trusts relative to the two fifths which were settled remained to be performed; and that, accordingly, he intended it to endure as long as the trusts of Mrs. Taite's share remained to be performed; for, if not, why did he give the power at all, or why did he not confine the power to the two fifths which were settled? I think this conclusive, that the testator intended the power to continue a subsisting power, as long as any trust remained to be performed with regard to any one of the shares."

Another case very much in point is that of Cresson *et*

*al. v.* Ferree, 70 Pa. St. 446, in which the Supreme Court of Pennsylvania held that where a testator had given equal shares of his estate to distinct trustees, for the separate use of each of his daughters for life, "and after the death of a daughter, to go according to the intestate laws," with power in the trustees, "when they thought advisable, to sell and convey his real estate and invest the proceeds for the uses before provided," the trustees had power to sell the land so long as any of the trusts continued. The opinion of the court in that case was delivered by Judge Sharswood, who cited approvingly the case of Taite *v.* Swinstead, *supra.*

3. Our next question is: Did the order of Judge Collier operate to make James A. Taylor trustee for the children? In our opinion, it did not. We do not think they were in any manner whatever affected by that order, and for two good reasons: First, as has been seen, the pleadings did not authorize any change of trustees as to them; and second, even if the petition of Mrs. Taylor had been sufficiently comprehensive to authorize such a thing to be done, the order was void as to the children for want of service upon or notice to them. It must not be overlooked that this order was passed after the code took effect. Section 4223 distinctly declares that in all cases of applications for the removal of trustees, or in similar cases where any person is interested besides the applicant, "notice to such person must be shown, or its absence accounted for, before the court shall proceed in the cause." And section 4224 declares that: "If minors are interested, and they have no guardians, guardians *ad litem* must be appointed and notified before the cause proceeds." In this respect, the case now before us is clearly distinguishable from that of *Freeman et al.* v. *Prendergast,* 94 *Ga.* 369. At the outset of the discussion in that case, the writer remarked, on page 375, that the appointment of the new trustee in question "was made in the year 1847, which was long be-

fore the adoption of the code, and that the provisions of sections 4223 and 4224  .   .  were not then in force."

4, 5. The conclusions expressed in the 4th and 5th headnotes follow logically from the foregoing, and are supported by the decision in *Lamar* v. *Pearre, supra.*

The court committed no error in directing a verdict in the plaintiff's favor.                          *Judgment affirmed.*