## WADLEY, executor, *et al. v.* JONES *et al.*

Where, under the powers conferred by a trust deed executed in 1854, as set out in the statement of facts and opinion in this case, the second trustee, with the written consent of the surviving cestui que trust, conveyed real estate to a purchaser thereof for value, *Held,* that the power of sale, conferred on the first trustee, survived to the second trustee as such.

(a) The purchaser of the land in controversy, which was conveyed to him by the second trustee, with the written consent of the surviving cestui que trust, obtained a fee-simple title to the land so conveyed.

(b) In such case, the children of the cestuis que trust, on the death of the latter, took no interest in the lands in controversy, conveyed by the second trustee with the written consent of the surviving cestui que trust.

(c) The court erred in overruling the motion for a new trial in this case.
MAY 15, 1912.  REHEARING DENIED JUNE 13, 1912.

Complaint for land.  Before Judge Rawlings.  Jenkins superior court.  July 25, 1911.

The petition, as amended, of Mattie A. Jones, James H. Anderson, and Howard Anderson, shows substantially the following: They are the surviving children of Susan J. Anderson, deceased, and bring their action against John Brady and others to recover a certain tract of land in Jenkins county, containing 262-1/2 acres, more or less.  The defendants are tenants of W. M. Wadley, executor of the estate of W. O. Wadley, deceased, and rent and work said land as croppers of said Wadley, executor.  Petitioners claim title to the land and mesne profits since June 1, 1907.  Wadley, executor, claims title to said land from Augustus H. Anderson, the husband in his lifetime of Susan J. Anderson. · Petitioners claim title as follows:  (a) A marriage contract in 1854 between Augustus H. Anderson and his wife, Susan J. Anderson, conveying

the land in trust for Susan J. Anderson for life, and at her death
to petitioners, who are surviving children of said marriage and the
remaindermen under the said deed of trust. (*b*) Death of Susan
J. Anderson in 1907. The material parts of said deed of trust are
as follows: "Whereas the daughter of Col. Augustus H. Anderson,
before and at the time of her intermarriage with Augustus H.
Anderson Jr., was possessor of and entitled unto a considerable
estate both real and personal property derived unto her by and
under the will of her grandmother Jane Jones, formerly of said
county and State, deceased, to wit, to a tract of land situated, lying,
and being in said county, which will be more particularly described
by reference to the division of the estate of the said Jane Jones,
deceased, aforesaid, and which is a part and parcel of a tract of
land on which the said testator resided at the time of her death,
and of the following negro slaves, viz., Rose, Washington, Charles,
Everline, Kit, Wesley, Caty, Margurite, Sam, Abraham, and Little-
ton, together with the sum of ten thousand ($10,000) dollars in
money, the artificial increase of the said property since the division
as aforesaid under the will of said deceased; and whereas the said
Augustus H. Anderson is desirous of securing unto his said wife
and to the issue of said marriage the aforesaid property: Now
this indenture made and executed this 21st day of Feb., A. D.
1854, for and in consideration of the premises and of the love and
affection which he hath and doth bare unto his said wife Susan J.
Anderson, and for the further consideration of the sum of ten
dollars which he acknowledges to have received at or before the
sealing and of these presents, the receipt whereof is hereby ac-
knowledged, hath granted, bargained, and sold, and by virtue of
these presents doth grant, bargain, and sell, upon the following
trusts, uses, limitations, and conditions, unto the trustees herein-
after to be nominated and appointed, for the uses hereinafter set
forth, the foregoing described land and negroes and the sum of
eight thousand dollars to be hereinafter appropriated, viz., to the
said trustee for the joint and separate use, maintenance, and sup-
port of the said Augustus H. Anderson and his wife Susan J.
Anderson, for and during the term of their and each of their
lives, and to the survivor of them during his or her life, the corpus
or principal of said property not to be subject or liable to any
debt heretofore contracted for or to hereafter be contracted for

by the said Augustus H. Anderson or the said Susan J. Anderson; and it is further stipulated that the aforesaid sum of eight thousand ($8,000) dollars shall be vested in land, negroes, or stock, or in such other property as the said Augustus H. Anderson and his said wife Susan shall consent and agree upon, which said property or stock when purchased shall be subject to all the uses, trusts, limitations, and conditions in this indenture set forth and declared. It is further stipulated that the said Augustus H. Anderson shall have the possession, custody, and control of the aforesaid property, and that the artificial increase or proceeds shall be appropriated in so far as may be necessary to the support and maintenance of the said Augustus H. and the said Susan J. Anderson, and of their family. It is further stipulated that any of the aforesaid property now in possession or hereafter to be purchased may, upon the written consent of the aforesaid Augustus H. and Susan J. Anderson, be aliened, sold, and conveyed; but it is expressly required that the proceeds of such sale or sales shall be reinvested in such other property as the parties hereinbefore named shall require, and that when so invested the property so purchased shall be subject to all the uses, limitations, and conditions in this indenture set forth and declared. It is further stipulated and conveyed [covenanted?] that upon the happening of the death of the survivor of the said Augustus H. Anderson or the said Susan J. Anderson, the aforesaid property, with the natural increase of the female slaves, shall go to and vest in the children of the said Augustus H. Anderson and Susan J. Anderson, if any, share and share alike, in fee simple. It is further stipulated and covenanted that upon the happening of the death of either the said Augustus H. Anderson or the said Susan J. Anderson, leaving no issue or children capable of inheriting, that then and in that case the aforesaid property shall be vested and remain in the survivor, in fee simple forever, free from the aforesaid trust. It is further covenanted, stipulated, and agreed upon, that William J. Rhodes be and he is hereby appointed trustee, for the purpose of carrying out the provisions of this indenture; and it is further understood and covenanted and declared that in the event of the trusteeship so as aforesaid becoming vacant by death or resignation or any other cause, that the said Augustus H. Anderson and Susan J. Anderson, or, in the event of the [death of] one of them, the survivor of

them, shall have full power and authority to appoint, by this writing under seal, such person as trustee as they may deem advisable and proper."

The defendants in their answer to the petition denied all of its material allegations. Evidence being submitted to the jury by both plaintiffs and defendants, on motion of the plaintiffs' counsel the court directed a verdict in favor of the plaintiffs for the premises described in the petition. A motion for a new trial was overruled, and the defendants excepted.

Citations from briefs (besides those in the opinion): *Parrott* v. *Edmondson,* 64 *Ga.* 332; *Headen* v. *Quillian,* 92 *Ga.* 220; *Heath* v. *Miller,* 117 *Ga.* 854; *Vernoy* v. *Robinson,* 133 *Ga.* 653; *Mahoney* v. *Manning,* 133 *Ga.* 784; *Fleming* v. *Hughes,* 99 *Ga.* 444; *Carswell* v. *Lovett,* 80 *Ga.* 36; *Overstreet* v. *Sullivan,* 113 *Ga.* 991; *Davis* v. *Sanders,* 123 *Ga.* 177; *Fulghum* v. *Strickland,* 123 *Ga.* 258; Civil Code, § 3680; 22 Am. & Eng. Enc. L. 1101; 31 Cyc. 1106.

*Miller & Jones, E. L. Brinson,* and *W. H. Davis,* for plaintiffs in error. *R. O. Lovett,* contra.

HILL, J. (After stating the foregoing facts.) The crucial question in this case is, did the power conferred by the trust deed on the first trustee to sell the fee-simple estate in the lands in controversy survive to the second trustee. It is insisted by the defendants in error that the power of sale conferred upon the first trustee was a personal trust and did not pass to his successor. But to this contention we do not agree. We shall endeavor to demonstrate from the recitals contained in the trust deed that the power of sale conferred upon the first trustee survived to the second trustee. In the marriage settlement of 1854 the husband was waiving his marital rights, by which prior to the act of 1866 the title to the land would vest in him as the husband upon his reducing it to possession. He therefore executed a postnuptial contract whereby he conveyed all the property, real and personal, of which he was possessed from his wife, "unto the trustees hereinafter to be nominated and appointed." The word "trustees" in the above quotation is used in the record both in the plural and singular number. In the exhibit attached to the petition it is used in the singular, "trustee," but in the brief of the evidence, which contains what also purports to be a copy of the trust deed, the plural noun, "trustees," is employed. Which is correct we are unable to say from the record. If the maker of the instrument used the word "trustees,"

it is an added argument to the effect that he intended the powers to survive to the second trustee, who was to be appointed in case of the death of the first. If the word "trustee" was used, it would still not affect the conclusions here reached; for we think that what follows makes it manifest that the intention of the maker was that the power of sale conferred on the first trustee should survive to the second. And we are holding that it was the intention of the maker, as expressed in the instrument itself, which must control. See *Freeman* v. *Prendergast,* 94 *Ga.* 369 (2), 389 (21 S. E. 837). The settlor provides that the sum of $8,000 shall be vested in land, negroes, or stock, or in such other property "as the said Augustus H. Anderson and his said wife Susan shall consent and agree upon," etc. It is also stipulated that "the said Augustus H. Anderson shall have the possession, custody, and control of the aforesaid property, and that the artificial increase or proceeds shall be appropriated in so far as may be necessary to the support and maintenance of the said Augustus H. and the said Susan J. Anderson and of their family." It is further provided that any of the property "now in possession or hereafter to be purchased may, upon the written consent of the aforesaid Augustus H. and Susan J. Anderson, be aliened, sold, and conveyed; but it is expressly required that the proceeds of such sale or sales *shall* be reinvested in such other property *as the parties hereinbefore named shall require,"* etc. "It is further covenanted, stipulated, and agreed upon, that William J. Rhodes be and he is hereby appointed trustee for the purpose of carrying out the provisions of this indenture; and it is further understood, covenanted, and declared that in the event of the trusteeship so as aforesaid becoming vacant by death or resignation or any other cause, that the said Augustus H. and Susan J. Anderson, or, in the event of the [death of] one of them, the survivor of them, shall have full power and authority to appoint, by this [their?] writing under seal, such person as trustee as they may deem advisable and proper."

It seems clear from reading these provisions of the trust deed that the maker intended to reserve to himself and wife, or, in case of the death of either, to the survivor, the right to name the "trustees," and also the right to have the trustee, only upon the written consent of the beneficiaries, or either of them in case of the death of the other, alien, sell, and convey any of the property

"now in possession, or hereafter to be purchased." The power to sell was clearly intended to be in the trustee as such, with the written consent of the beneficiaries, and not in any particular trustee. It was not a "personal trust," to be executed by one particular trustee only, but it was the clear intent to vest the power to sell in the trustee, whoever he might be, under the appointment of the settlor and his wife, or either of them on the death of the other. And herein lies the distinction between the present case and that of *Luquire* v. *Lee,* 121 *Ga.* 624 (49 S. E. 834), cited by the defendant in error. In that case the court held, under its facts, "that the power in the deed was not incident to the office of trustee, but personal to the trustee." The decision indicates a discretionary power in the trustee; but it is also said that "the grantor, if she wished to deprive the trustee of any discretion as to the sale and reinvestment, could very well have made it his duty to sell and reinvest at the will of Mr. and Mrs. Lee, thus constituting the trustee the mere conduit of passing the legal title. Id. p. 629. In the present case the land "may" be sold, but the discretion is reserved in the settlor and his wife, or the survivor in the event of the death of the other, and if it is sold, it "shall be reinvested," not as the trustee may say, but "as the parties hereinbefore named [the settlor and his wife] shall require." Here the discretion is reserved by the trust deed in the grantor and the other cestui que trust, and the trustee can not act except upon the written consent of the former. The trustee can not exercise his discretion independently of the maker of the trust deed and his wife. The discretion was not in the trustee, but in both the trustee and them.

This case differs from the ordinary case of the appointment of a trustee for others. Here a man was creating a trust and naming a trustee for himself and wife, with the power reserved in them to appoint a successor to the first trustee in case of his death, with like powers in and limitations on the second trustee. They could hardly be supposed to be lacking in confidence in themselves. They appointed the first trustee. If he died, they were to appoint his successor. He was not to be appointed by a court, or by any one other than themselves. They retained possession of the property. Reinvestment was to be made only by their consent. The trust property was not to be sold at the discretion of the trustee alone, but with the consent of the husband and wife, or the survivor.

Again we ask, did the power of sale provided by the trust deed survive to the successor of the first trustee? It seems clear from a careful reading of the trust deed that the maker intended the second trustee should have the same powers as the first. It would be strange indeed if the makers of the trust deed should appoint the first trustee with certain powers, reserve the right to appoint the second trustee, and then confer on the second trustee powers different from those conferred on the first trustee. The creator of the trust intended that both trustees should have the same powers. The power to convey attached to the office of trustee, and not to the individual; and this intent of the makers appears from the trust deed itself. In view of all the various indicia on the face of the trust deed, we hold that the powers conferred on the first trustee were intended to and did survive to the second trustee as such; and this being so, it follows that when the second trustee, with the written consent of the surviving cestui que trust, sold and conveyed the fee-simple title to the land in controversy, the purchaser obtained a fee-simple title thereto, and on the death of both cestuis que trust their children have no interest in the lands thus conveyed. The court below, therefore, erred in overruling the motion for a new trial. *Judgment reversed. All the Justices concur.*