**Maria LUGUE, Plaintiff,**

v.

**HERCULES, INCORPORATED, Defendant and Third Party Plaintiff,**

v.

**Margaret Nix LUGUE and Roberto Lugue, Sr., Third Party Defendants.**

**Margaret Nix LUGUE, Plaintiff,**

v.

**HERCULES, INCORPORATED, Defendant.**

**Civil Action Nos. CV296–122, CV296–133.**

United States District Court, S.D. Georgia, Brunswick Division.

Oct. 22, 1997.

---

**1354**

Walter Douglas Adams, Brunswick, GA, for Plaintiffs.

T. Joshua Archer, J. Kevin Buster, Carmen R. Toledo, King & Spalding, Atlanta, GA, James A. Bishop, Brunswick, GA, for Defendants.

### ORDER

ALAIMO, District Judge.

Plaintiffs, Maria Lugue ("Maria") and Margaret Nix Lugue ("Margaret"), bring this action seeking injunctive and monetary relief for alleged contamination and trespass to their real property by Defendant, Hercules, Incorporated ("Hercules"). Currently before the Court are three Motions for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Hercules brings two Motions for Summary Judgment addressing the issues of causation, damages, injury, and title. Plaintiff, Maria Lugue, brings one Motion for Summary Judgment on the Issue of Trespass. For the following reasons, Hercules' Motion for Summary Judgment on the Issue of Title will be **DENIED**, Hercules' Motion for Summary Judgment on the Issues of Causation, Damages, and Injury will be **DENIED**, and Plaintiff's Motion for Summary Judgment on the Issue of Trespass will be **DENIED**.

### FACTS

This action is the consolidation of two cases, one brought by Maria Lugue, and the other, by Margaret Lugue. Maria contends that she owns the property located at 234 Benedict Road in Brunswick, Georgia. (Compl. ¶ 4). Maria's mother, Margaret, contends that she owns the vacant lot adjacent to 234 Benedict Road. (Compl. ¶ 4). Margaret is married to Roberto Lugue, Sr. ("Roberto Sr."), who managed the rental property located at 234 Benedict Road. Plaintiffs contend that their properties were contaminated by toxaphene located at Hercules' 009 landfill. Plaintiffs contend that the contamination is on-going, due to the toxaphene which is still stored at the landfill. Furthermore, Plaintiffs allege property damage from the removal of topsoil and trees from the property. Specifically, the complaints contain four counts: 1) Hercules' negligence in dealing, transporting, and disposing of the chemicals at the landfill, 2) trespass for the unauthorized removal of soil, trees, and vegetation, 3) nuisance, and 4) strict liability based on Hercules' involvement with an abnormally dangerous activity.

The properties involved originally were owned by L. Nix, who conveyed the land to Granville Nix. (1952 Deed). In 1960, Granville Nix placed the land in trust for his daughters, Margaret and Ruby Nix, naming himself as trustee. (1960 Deed of Trust). Then, in 1966, Granville Nix, individually and as trustee, conveyed the property to his former wife, Pauline Nix, as trustee for Margaret and Ruby Nix. (1966 Deed). Pauline Nix later divided the property and conveyed the vacant lot to Margaret, (1968 Deed), and the remaining property to "Maria Lugue and Roberto Lugue." (1979 Deed).

From 1948 to 1980, Hercules manufactured toxaphene, a pesticide, at its plant in Brunswick, Georgia. In 1975, Hercules built the 009 landfill adjacent to the land at issue in this case. Hercules operated the landfill until 1980 as a depository for waste resulting from the manufacture of toxaphene. After the landfill closed, unacceptable levels of toxaphene were found in the soil and groundwater of neighboring areas. In 1995, Hercules cleaned up the neighborhood soils which contained toxaphene under a consent decree with the Environmental Protection Agency ("EPA").[1] The clean-up included the remov-

---

1. Hercules contends that this clean-up was done even though there was no evidence that the contamination was caused by the operation of the landfill. Hercules expressly disclaimed liability in the EPA consent decree.

al of contaminated soils from the land, which then was replaced with clean soil. Since the clean-up, Hercules has continued to test the land surrounding the landfill.[2]

The land at issue in this case was involved in that clean-up effort. Hercules negotiated with Roberto Sr. in connection with the planned clean-up of the property. The discussions between Hercules and Roberto Sr. dealt with the details of Hercules' access to the property, the amount of compensation for the removed soil, trees, and vegetation, and permission to have the properties connected to the public water system at Hercules' expense. At one point, Roberto Sr. offered to sell the property to Hercules. Hercules rejected the offer, and the parties finally agreed upon $29,000 as compensation for Hercules' entry onto the land. Hercules paid and Roberto Sr. accepted $29,000. Hercules also connected the property to the city water supply and paved Nix Lane, which is located on the property.

## DISCUSSION

### I. Summary Judgment

Plaintiff, Maria Lugue, and Defendant, Hercules, have moved for summary judgment on various issues pursuant to Federal Rule of Civil Procedure 56. Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1532 (11th Cir.1994), *cert. denied,* 516 U.S. 930, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co.,* 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

Rule 56(c) of the Federal Rules of Civil Procedure provides in relevant part that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Only the specific items listed in Rule 56(c) should be considered by the Court when ruling on a motion for summary judgment. *Jones v. Menard,* 559 F.2d 1282, 1286 n. 5 (5th Cir.1977).[3] Furthermore, all reasonable inferences from the evidence will be made in favor of the non-movant. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir.1992).

Rule 56(e) provides that affidavits must be based on personal knowledge, set forth facts that would be admissible as evidence, and demonstrate that the affiant is competent to testify to the matters stated therein. *See Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 556 (5th Cir. 1980); *Ali v. City of Clearwater,* 915 F.Supp. 1231, 1236 (M.D.Fla.1996). Unsworn statements do not qualify as affidavits and are not considered by the Court when ruling on a motion for summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142, 154 (1970); *Gordon v. Watson,* 622 F.2d 120, 122 (5th Cir.1980); *White v. Wells Fargo Guard Serv.,* 908 F.Supp. 1570, 1579 (M.D.Ala.1995).

Additionally, documents and exhibits provided to support a motion for summary judgment must be complete. If a document is referred to in an affidavit, but no sworn or certified copy is attached, the Court should disregard all references to that document. 28 *Federal Procedure,* Lawyers Ed., Pleadings and Motions § 62:603 (1984). Documents which are not properly authenticated and verified do not meet the requirements of Rule 56(e) and should not be considered

---

2. Hercules' experts indicate that only a low level of toxaphene currently is found on the neighboring lands. They contend that the amount is not high enough to cause any risk to humans.

3. The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

when evaluating a motion for summary judgment. *First Nat'l Life Ins. Co. v. California Pacific Life Ins. Co.*, 876 F.2d 877, 881 (11th Cir.1989); *Davis v. Howard*, 561 F.2d 565, 569 (5th Cir.1977).

## II. *Defendant's Motion for Summary Judgment on the Issue of Title*

Hercules contends that Plaintiffs do not have marketable title of the real property and, therefore, cannot maintain their claims against Hercules. It is true that the chain of title is complex, but Plaintiffs appear to have sufficient interests in the land to maintain their claims. Thus, Defendant's motion will be denied.

■ Hercules' argument is based upon the allegedly inappropriate exercise of power by Pauline Nix ("Pauline"), as trustee of the land. The relevant portion of the chain of title of the land begins when Granville Nix ("Granville") owned the property. In 1960, he placed the land in trust for his daughters, Margaret and Ruby Nix, naming himself as trustee. The deed of trust granted Granville, as trustee, the power to sell, convey or dispose of the land.[4] In 1966, Granville conveyed the property to Pauline, as trustee for Margaret and Ruby Nix, providing her with the same powers that he had possessed as trustee.[5] Pauline then divided the property and conveyed part of the land to Margaret and the remainder of the land to Maria and Roberto Lugue. Hercules contends that Pauline did not have the power to convey the property, because the power to case, the 1966 instrument expressly granted Pauline the power to convey and sell the trust property. Hercules contends that, regardless of the express language of the instrument, Pauline did not possess the power to convey or sell the property, because Granville could not transfer the power to her. Hercules contends that Granville's power to convey the land was personal to him, and that personal powers cannot be transferred to subsequent trustees. (Def.'s Br.Supp.Summ.J. p. 5). *See Maynard v. Greer*, 129 Ga. 709, 710, 59 S.E. 798 (1907).

■ Hercules' argument fails, however, because Granville's power to convey the land was not a personal power. Georgia courts have provided a variety of factors to determine whether a trustee's powers are personal, or if the powers are attached to the office of the trustee. Courts consider the express language of the trust instrument, whether the powers are granted to the trustee alone, instead of to the "trustee and his successors," the size of the estate held in trust, and whether the powers could be exercised by the trustee alone. *Gilmore v. Gilmore*, 201 Ga. 770, 777, 41 S.E.2d 229, 233–34 (1947); *Luquire v. Lee*, 121 Ga. 624, 630, 49 S.E. 834 (1905); *Heath v. Miller*, 117 Ga. 854, 862, 44 S.E. 13 (1903); *Simmons v. McKinlock*, 98 Ga. 738, 741, 26 S.E. 88 (1896). However, the most important factor for Georgia courts is the intent of the settlor, as ascertained through the instrument. *Wadley v. Jones*, 138 Ga. 223, 227, 75 S.E. 325 (1912).

Hercules contends that the powers were personal to Granville, since they were granted to Granville, as an individual trustee, and not to Granville and his successors. (Def.'s Br.Supp.Summ.J. p. 5). *See Heath*, 117 Ga. at 862, 44 S.E. 13; *Simmons*, 98 Ga. at 741, 26 S.E. 88. That single factor, however, is insufficient for the Court to find as a matter of law that the powers were personal. In fact, the remaining factors lead to the conclusion that the powers were not personal. The first factor which indicates that the powers are not personal is that the trust property is a fee simple absolute in the described land, not a life estate. Personal powers generally are associated with trusts that contain life estates. *See Gilmore*, 201 Ga. at 777, 41 S.E.2d at 233–34; *Luquire*, 121 Ga. at 630, 49 S.E. 834. Next, the express language of the

4. Specifically, the deed of trust provided: "Grantee is given the broadest possible powers in his trust of such property. Grantee is given the right to hold, manage, rent, lease, mortgage, encumber, improve, develop, change, sell, dispose of, or otherwise, in any manner, to handle all of said property, as he in his sole discretion may deem best without being required to secure any permission of any court or person to so do."

5. The specific language from the conveyance is as follows: "It being the intention of this instrument to place into the Party of the Second Part [Pauline] any and all rights, powers, privileges, equity and interest that the Party of the First Part [Granville] may have either individually or as Trustee aforesaid in the described real estate."

deed of trust allows the trustee to use any of the granted powers without seeking the consent of any third party, which also points to the conclusion that the powers are not personal. *See Luquire*, 121 Ga. at 630, 49 S.E. 834. Finally, Granville's intent is clear when the chain of title is construed as a whole.

The facts in this case are similar to the facts in *Wadley*, Where the court determined that the mere fact that the trust instrument did not grant the powers to "trustees" would not necessarily make the powers personal, especially in light of the clear intent of the settlor. 138 Ga. at 229, 75 S.E. 325. In both *Wadley* and the instant case, the settlor retained control of the trust and appointed himself as trustee. Both trust instruments granted powers only to the "trustee." In *Wadley*, the Georgia Supreme Court held that the powers were not personal and could be transferred to a subsequent trustee. *Id.* at 228, 75 S.E. 325. The Court is persuaded and bound by the decision in *Wadley*, Since the weight of the factors point to a conclusion that the granted powers are not personal, and since Granville's intent is clear, he could transfer the power to sell and convey the trust property to Pauline. For the same reasons, Pauline had authority to convey the land to Margaret, Maria, and Roberto Lugue.

 Additionally, Hercules cannot challenge the conveyances by Pauline, since it does not have any interest in either the trust or the challenged transactions. Hercules' argument, in essence, is that Pauline breached her duties as trustee when she made the conveyances. Remedies for breach of trust must be sought by the beneficiaries

of the trust, or by a third party with a direct interest in the transaction.[6] *Turner v. Trust Co.*, 214 Ga. 339, 345, 105 S.E.2d 22, 26–27 (1958) (citations omitted); *Hayles v. Farmer*, 58 Ga. 324, 328 (1877). So, even if Hercules' contentions regarding the trustee's powers were correct, it has no interest upon which to challenge the conveyances.

Hercules' motion for summary judgment on the issue of title is denied because Hercules has failed to show as a matter of law that Plaintiffs do not have interests in the property upon which a claim could be based. Pauline, as trustee, had the authority to convey the property to Plaintiffs. Additionally, Hercules is· not in the appropriate position to challenge the conveyances, and since the beneficiaries of the trust have not challenged the conveyances, they will be upheld.

### III. Defendant's Motion for Summary Judgment on the Issues of Causation, Damages, and Injury

In this motion for summary judgment, Hercules· contends that the material facts relating to causation, injury, and damages are undisputed. Hercules further contends that it is entitled to summary judgment on causation, injury, and damages because Plaintiffs have failed to establish these issues with expert testimony. Plaintiffs, however, are under no burden to provide expert testimony in light of Defendant's admissions.

 Hercules has not presented the Court with sufficient evidence to support this motion for summary judgment, as required under Rule 56. Hercules provided unsworn

---

6. In this situation, the only parties who can challenge the conveyances are the beneficiaries of the trust, Margaret and Ruby Nix, and the parties involved in the conveyances, Margaret, Maria, and Roberto Lugue. Hercules did· not present evidence that any of these parties challenged, or are planning to challenge, the conveyances. Construing the evidence in the light most favorable to Plaintiffs, the nonmovants, it appears that the parties have ratified the transactions. The beneficiaries of a trust can ratify the actions of the trustee by accepting the benefits of the action. *Warner v. Hill*, 153 Ga. 510, 513, 112 S.E. 478 (1922). In this case, Margaret has accepted the benefit of the transaction, since she has been acting as owner of the property.

There is no evidence in the record whether Ruby Nix has ratified the transaction. However,

even if Ruby Nix has not ratified the conveyances, her failure to challenge the conveyances earlier may now estop her from challenging the conveyances. *Davis v. Auerbach*, 78 Ga.App. 575, 579, 51 S.E.2d 527, 531 (1949). In *Heath*, the court found that a beneficiary who waited thirty years to challenge a conveyance was estopped, and the court affirmed the unauthorized transfer of property by a subsequent trustee. 117 Ga. at 863, 44 S.E. 13. The length of time is a question of fact to be determined by the jury, so the Court cannot find as a matter of law that Ruby would now be estopped. *Davis*, 78 Ga. App. at 579, 51 S.E.2d 527. Furthermore, The appropriate remedy for a breach of trust is direct action against the trustee, not to undo the transaction. *Turner*, 214 Ga. at 346, 105 S.E.2d 22.

reports from experts and an unauthenticated incomplete record of decision from the Environmental Protection Agency ("EPA") in support of its summary judgment motion. (Exhibits A, B, D, E). The Court will not consider the unsworn reports from the experts when deciding this motion. *See Adickes,* 398 U.S. at 158 n. 17, 90 S.Ct. at 1609, 26 L.Ed.2d at 154; *Gordon,* 622 F.2d at 122; *White,* 908 F.Supp. at 1579. The former Fifth Circuit specifically addressed this issue of the admissibility of unsworn letters or reports from experts and held that a report which does not meet the requirements of 56(c) should not be considered when ruling on a motion for summary judgment. *Jones,* 559 F.2d at 1286 n. 5; *see also Meserole v. M/V Fina Belgique,* 736 F.2d 147, 149 (5th Cir.1984). Additionally, the Court will disregard the unauthenticated incomplete record of decision from the EPA. Documents which are not authenticated and are incomplete should not be used for purposes of summary judgment. *See First Nat'l Life Ins.,* 876 F.2d at 881; *Davis,* 561 F.2d at 569.

■ Hercules contends that all of its exhibits should be considered in the Motion for Summary Judgment due to Plaintiffs' failure to make a Motion to Strike. (Reply Br. Supp.Summ.J. p. 3). However, the nonmoving party is not required to make a motion to strike exhibits that do not conform with the federal rules. All that is required is a timely objection that sets forth the grounds for the objection. *Casas Office Mach., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668, 682 (1st Cir.1994); *Pinkerton & Laws Co. v. Roadway Express, Inc.,* 650 F.Supp. 1138, 1141 (N.D.Ga.1986) (citations omitted). In this case, Plaintiffs objected in a timely manner to Hercules' exhibits. (Pls.' Br. Opp'n Summ.J. pp. 2, 4). Plaintiffs identified both the objectionable evidence and provided grounds for their objections.

Additionally, Hercules contends that the Court should consider the unsworn report of the experts for the purposes of summary judgment because they were prepared pursuant to the mandatory disclosure requirements of Rule 26(a)(2) of the Federal Rules of Civil Procedure. (Reply Br.Supp.Summ.J.

p. 3).[7] This argument is not persuasive. The mere fact that a document satisfies the requirements for one Federal Rule of Civil Procedure does not mean that it necessarily meets the requirements of a different rule. This is especially true when the purposes behind two rules are different, as in the instant case. Rule 26(a)(2) is designed to dispense with the need to depose every expert witness, to assist opposing counsel in preparation for expert depositions, and generally, "to accelerate the exchange of basic information about the case." Advisory Comm.'s Note 1993 Amends.

On the other hand, the requirements found in Rules 56(c) and 56(e) are based on the premise that summary judgment serves as a substitute for a trial and, therefore, the affidavits and depositions which support the motion are a substitute for live testimony at trial. *Treadwell v. Dow–United Tech.,* 970 F.Supp. 962, 966 (M.D.Ala.1997) (quoting *Resolution Trust Corp. v. Juergens,* 965 F.2d 149, 152 (7th Cir.1992)). Because the two rules have differing purposes, the requirements to meet Rules 56(c) and 56(e) are higher than that found in Rule 26(a)(2). Therefore, the unsworn expert reports, which may have been prepared in compliance with Rule 26(a)(2), will not be considered by the Court for purposes of summary judgment.

## A. Toxaphene Contamination

■ Hercules' remaining exhibits fail to establish an absence of a genuine dispute as to either the cause or existence of toxaphene contamination on Plaintiffs' land. (Exhibits C, F, G, H). Hercules is not entitled to judgment as a matter of law on these issues due to its admissions. Hercules' representative, David Smith ("Smith"), provides in his deposition testimony his opinion as to how the toxaphene contamination occurred and admits, on behalf of Hercules, that the land was contaminated. (Exhibit C). Furthermore, Smith has not been qualified as an expert. Smith's opinion as to potential alternative causes of the contamination is not probative and, thus, it does not warrant an

---

**7.** In neither case cited by Hercules in support of this proposition is there discussion of whether the reports were sworn or unsworn. Additional-

ly, it is not clear that the reports in those cases, nor here, were prepared pursuant to Federal Rule of Civil Procedure 26(a)(2).

award of summary judgment on the issue of causation. Additionally, Hercules admitted in an interrogatory answer that its trucks were responsible for the contamination. This admission establishes both causation and injury regarding the toxaphene contamination.

Hercules contends that the remaining exhibits, the excerpts from the depositions of Margaret Nix Lugue, Maria Lugue, and Roberto Lugue, establish that Hercules is entitled to summary judgment on these issues. (Exhibits F, G, H). These excerpts, however, are merely admissions that these individuals have not independently tested to determine if the land was contaminated, nothing more. Due to Hercules' admissions that the land was contaminated and the absence of any other evidence, Hercules is not entitled to summary judgment on either the existence or causation of toxaphene contamination.

## B. Trespass

 Hercules contends that Plaintiffs have failed to establish any damages resulting from Hercules' entry onto the land. Hercules further contends that the failure to prove damages prevents Plaintiffs from bringing a claim for trespass. However, such contentions are not in accord with Georgia law. Trespass is broadly defined under Georgia law: "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." O.C.G.A. § 51-9-1 (1982). Any unlawful interference with property, regardless of actual injury, is considered a trespass. *Dowdell v. Cherry*, 209 Ga. 849, 849, 76 S.E.2d 499, 500 (1953). It is well established that no proof of actual injury to the land or a diminution in the property's value is required to maintain an action for trespass. *Marshall v. Georgia Power Co.*, 134 Ga.App. 479, 480, 214 S.E.2d 728, 730 (1975); *Batson v. Higginbothem*, 7 Ga.App. 835, 838, 68 S.E. 455 (1910); *Pausch v. Guerrard*, 67 Ga. 319, 323 (1881). Nominal damages can be awarded when the amount of actual injury is unclear. *Morgan v. Black*, 86 Ga.App. 775, 777–78, 72 S.E.2d 558, 559–

60; *Batson*, 7 Ga.App. at 838, 68 S.E. 455 (citing *Swift v. Broyles*, 115 Ga. 885, 42 S.E. 277 (1902)).

 In this case, Plaintiffs allege that Hercules trespassed upon the property and removed soil, trees, and vegetation. (Compl. ¶ 22.) In order to survive a summary judgment motion, Plaintiffs only must establish a question of fact as to whether Hercules tortiously invaded the property. *Kiel v. Johnson*, 179 Ga.App. 43, 43, 345 S.E.2d 131, 133 (1986) (holding that a directed verdict was inappropriate when the plaintiff had established an invasion of her property). Plaintiffs allege in their complaints that Hercules wilfully and unlawfully invaded the property. Hercules admits that it entered the land in question to conduct the EPA-directed cleanup. There is no requirement under Georgia law that actual injury be established. Rather, if Plaintiffs do not establish actual injury, the jury can still award nominal damages for the trespass.[8] *Batson*, 7 Ga.App. at 838, 68 S.E. 455. While it is not necessary, Plaintiffs do allege actual injury as a result of the trespass. (Compl. ¶¶ 20, 22–24).

 Hercules contends that Plaintiffs must present expert testimony to establish injury for trespass. (Def.'s Mot. Summ.J. pp. 8, 9). However, Plaintiffs' opinion regarding the loss of the soil, trees, and vegetation is sufficient for a jury to determine the appropriate award of damages. There is no need for expert testimony to determine the damage caused by trespass. *See Ingram v. Summerlin*, 179 Ga.App. 832, 833, 348 S.E.2d 68, 69 (1986) (holding that the plaintiff's opinion regarding the decreased value of the land after the removal of trees and vegetation was sufficient to sustain damages for trespass); *Sims v. Majors*, 178 Ga.App. 679, 681, 344 S.E.2d 501, 503 (1986) (holding that opinion testimony from a variety of lay witnesses as to the general character of the land and the quantity and quality of timber thereon was sufficient for a jury to determine damages). Plaintiffs have met their burden to maintain a claim for trespass. Hercules has failed to

---

**8.** An award of nominal damages will support an award of punitive damages. 75 Am.Jur. Trespass § 149 (1991).

establish that it is entitled to judgment as a matter of law on the issue of damages for trespass.

#### IV. *Plaintiff's Motion for Summary Judgment on the Issue of Trespass*

Plaintiff, Maria Lugue, contends that summary judgment on the issue of trespass is appropriate because Hercules removed soil, trees, and vegetation from her land, without permission or compensation. (Pl.'s Br. Supp.Summ.J. p. 6). Hercules, however, contends that the Court should deny Plaintiff's motion for three reasons. (Def.'s Opp'n Summ.J. p. 2).

First, Hercules contends that Plaintiff did not establish damages for the trespass, which prevents an entry of judgment as a matter of law on this issue. This argument, however, must fail. As discussed above, there is no need under Georgia law to allege actual damages as a result of trespass and Plaintiff did establish Hercules entered the land. *See Kiel*, 179 Ga.App. at 43, 345 S.E.2d at 133. Additionally, Plaintiff has alleged actual injury as a result of the entry. *See* part IIIB *supra.*

Second, Defendant argues that Plaintiff does not have marketable title to the land in question and, therefore, cannot maintain a claim for trespass. This argument is disposed of in Part II of this order and fails as well. Plaintiffs do have title in the land as a result of the conveyances made by Pauline, as trustee of the land. Furthermore, Hercules does not have standing to challenge these conveyances. *See* discussion part II *supra.*

Third, Defendant argues that Roberto Sr. may have had authority to authorize Hercules' entry onto the land. Roberto Sr. negotiated with Hercules to determine the terms and conditions of Hercules' entry onto the land to perform the clean-up of the toxaphene contamination. There are two ways that Roberto Sr. may have possessed the authority to negotiate and authorize Hercules' entry onto the property: actual or apparent authority. If the entry was authorized, then it would not be considered a trespass. *Rossee Oil Co. v. BellSouth Telecomm., Inc.*, 212 Ga.App. 235, 236, 441 S.E.2d 464, 465 (1994). Roberto Sr. may be the co-owner of the property, since the 1979 deed conveyed the property to "Roberto Lugue and Maria Lugue." It is unclear whether the deed was referring to Roberto Sr. or Roberto Jr.[9] If Roberto Sr. were an owner of the property, he would have actual authority to allow others to enter the land on whatever terms he negotiated. *Id.*

Although the Court typically construes titles and determines the owner of property as a matter of law, when an ambiguity is present, the Court may consider extrinsic evidence and defer the question to the jury. *Khamis Enter., Inc. v. Boone*, 224 Ga.App. 348, 349, 480 S.E.2d 364, 367 (1997); *Young v. Faulkner*, 217 Ga.App. 321, 321, 457 S.E.2d 584, 585 (1995). In this case, the Court cannot resolve the ambiguity of the deed as a matter of law. A question of fact exists which must be resolved by the jury. There is evidence that Pauline drew up a letter of affirmation indicating that the deed was intended for Roberto Jr. Roberto Sr. and Margaret, however, both treated the land as if Roberto Sr. were the owner. A material question of fact exists as to Roberto Sr.'s actual authority and, therefore, summary judgment is inappropriate on this issue.

There is also a question of fact whether Roberto Sr. had apparent authority in this case. If Roberto Sr. had apparent authority, he would be acting as an agent for Plaintiff, the principal. Agency questions are to be resolved by the trier of fact, since they often involve ascertaining the intentions of the parties involved. *Williams v. Department of Corrections*, 224 Ga.App. 571, 576, 481 S.E.2d 272, 277 (1997); *Turner Broad. Sys., Inc. v. Europe Craft Imports, Inc.*, 186 Ga.App. 286, 286, 367 S.E.2d 99, 100 (1988).

To establish apparent authority, three requirements must be met: 1) that the alleged principal held out another as its agent, 2) that a third party justifiably relied on the agent based upon the principal's representations, and 3) that the reliance caused the third party an injury. *Kissun v. Humana, Inc.*, 267 Ga. 419, 419, 479 S.E.2d 751, 752 (1997); *Butkus v. Putting Greens Int'l Corp.*, 222 Ga.App. 661, 663, 475 S.E.2d 693,

---

9. Roberto Jr. is the son of Margaret and Roberto Lugue Sr. He is also Maria Lugue's brother.

694 (1996). In order for apparent authority to exist, there must be specific conduct by the principal, not the agent, which would lead a third party to reasonably believe that the agent was acting with authority. *Gosule v. Bestco, Inc.*, 227 Ga.App. 863, 864, 490 S.E.2d 532, 534; *Brown v. Little*, 227 Ga.App. 484, 487, 489 S.E.2d 596, 599 (1997); *Butkus*, 222 Ga.App. at 663, 475 S.E.2d at 694. The principal's intent can also be established by considering the course of dealings among the parties.[10] *Addley v. Beizer*, 205 Ga.App. 714, 718, 423 S.E.2d 398, 402 (1992).

There is evidence that Roberto Sr. had apparent authority. The Lugue family allowed Roberto Sr. to administer the real estate investments, including the land involved in the instant case. Hercules assumed that Roberto Sr. had authority to negotiate entry upon the land and compensated him for the entry. A question of fact remains which precludes summary judgment.

Additionally, Plaintiff may be estopped to deny that an agency relationship existed. "When an alleged principal, by acts or conduct, has knowingly caused or permitted another to appear as his agent, he will be estopped to deny the agency..." *Williams*, 224 Ga.App. at 576, 481 S.E.2d at 277 (quoting *Allen & Bean Inc. v. American Bankers Ins. Co.*, 153 Ga.App. 617, 619, 266 S.E.2d 295, 297 (1980)); *Addley*, 205 Ga.App. at 717, 423 S.E.2d at 402. In order for estoppel to apply in this case, Hercules must show that it acted reasonably and prudently when it relied on Roberto Sr.'s assertions and was injured as a result of that reliance. *Addley*, 205 Ga.App. at 718, 423 S.E.2d at 403. These are material questions which remain unanswered regarding estoppel and preclude the entry of summary judgment.

Finally, Plaintiffs may have ratified Roberto Sr.'s actions, even if those ac-

tions were unauthorized.[11] If Plaintiffs ratified Roberto Sr.'s negotiations with Hercules, they would be prevented from now bringing a claim for trespass. "Ratification must be with the knowledge of the material facts and the principal would be required to repudiate the unauthorized act within a reasonable time after acquiring knowledge thereof, otherwise a ratification would result by operation of law." *Griggs v. Dodson*, 223 Ga. 164, 164, 154 S.E.2d 252, 254 (1967). The question of what is a reasonable time for the purposes of ratification is a question to be answered by the jury, because it depends on the unique circumstances of each case. *Id.* at 170, 154 S.E.2d at 257. The evidence shows that Plaintiff knew that Hercules entered the land in 1995 under an agreement made with Roberto Sr. Maria discovered that she may own the land in 1995 when she discovered the 1979 deed with her name on it, yet did not bring this action until 1996. It is a material question of fact whether the length of time that elapsed between the time Plaintiff knew of Roberto Sr.'s actions and brought the claims was sufficient to be considered ratifications of Roberto Sr.'s actions.

## CONCLUSION

Having considered fully the positions asserted by the parties in this matter, the Court concludes that Hercules' Motion for Summary Judgment on the Issue of Title is **DENIED,** Hercules' Motion for Summary Judgment on the Issues of Causation, Damages, and Injury is **DENIED,** and Plaintiffs' Motion for Summary Judgment on the Issue of Trespass should be and is, hereby, **DENIED.**

---

10. Hercules argues that apparent authority also can be established when there are "special circumstances" which would lead a third party to rely on the representations of the agent. (Def.'s Opp'n Pl.'s Summ.J. p. 16 (citing *Griggs v. Dodson*, 223 Ga. 164, 169, 154 S.E.2d 252, 256 (1967))). The only "special circumstances" found by Georgia courts are the inherent powers of attorneys to utilize on behalf of their clients. *See Addley*, 205 Ga.App. at 718, 423 S.E.2d at

403. These "special circumstances" are not present in the instant case.

11. Estoppel is distinguished from ratification since it "is the inducement to another to act to his prejudice, while ratification is the confirmation by one of an act performed by another without authority." *Griggs*, 223 Ga. at 169, 154 S.E.2d at 256 (citations omitted).